**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0200n.06

No. 12-3261

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 25, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SABIT PULATOV, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW |
| | ) | OF A FINAL ORDER OF |
| v. | ) | THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., United States | ) | |
| Attorney General, | ) | |
| | ) | **O P I N I O N** |
| **Respondent.** | ) | |
| | ) | |

Before:  **SUHRHEINRICH, MOORE, and GIBBONS, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Sabit Pulatov ("Pulatov"), a native and citizen of Uzbekistan, appeals the denial of his requests for asylum and withholding of removal by the Board of Immigration Appeals ("BIA").  We **DISMISS** his asylum appeal for lack of jurisdiction to hear his predominantly factual appeal.  We further **DENY** review of the BIA's decision regarding withholding of removal as being not manifestly contrary to law.

**I.  BACKGROUND AND PROCEDURE**

While in Uzbekistan, Pulatov's son died of oral cancer, for which Pulatov blamed a legal, smokeless-tobacco product known as "nasvay."  Administrative Record ("A.R.") at 97 (Immigration Judge ("IJ")'s Oral Decision ("Oral Dec.") at 6).  In response, Pulatov organized "The Fund in Honor of Rustam Pulatov," through which he advocated against the use of nasvay; at its largest, the fund

consisted of 16 members. *Id.*[1] Pulatov twice sought, but failed, to register the fund with the Ministry of Justice. *Id.* at 97–98 (Oral Dec. at 6–7). Nevertheless, the fund organized meetings and distributed leaflets to raise awareness about the dangers of nasvay. *Id*. at 98 (Oral Dec. at 7). The fund also met with nasvay vendors, and apparently convinced some to stop selling the product. Finally, the fund lobbied the National Analytical Information Center on Narcotics and the local police to end the use and sale of nasvay. *Id*.

Pulatov began to receive threatening phone calls regarding his advocacy. On October 11, 2004, men dressed in police uniforms grabbed Pulatov and beat him unconscious; he remained hospitalized for eight days. *Id.* at 99 (Oral Dec. at 8). After leaving the hospital, Pulatov hired two private detectives. The detectives discovered two manufacturing sources for nasvay, and discovered that both the governor and first deputy of Tashkent (Pulatov's home province) were involved in its production. *Id.* at 100 (Oral Dec. at 9). Pulatov planned to give this information to an opposition political party, but, before he could, he was searched by three police officers, then taken to the Office of Internal Affairs, beaten, fitted with a gas mask, and cut off from receiving oxygen. *Id.* at 101 (Oral Dec. at 10). He was held for three days, then hospitalized for a concussion and dislocated arm. *Id.* at 102 (Oral Dec. at 11). On June 1, 2005, Pulatov and his family tried to flee Uzbekistan; they were stopped by police and beaten, and Pulatov later learned that his daughter had been raped. *Id*. Pulatov and his family eventually escaped to Kazakhstan. After being granted a temporary non-

---

[1]Pulatov now claims that the fund consisted of 60 members at its peak, and claims that the number 16 was incorrectly transcribed by the administrative reporter. Pet'r Br. at 7 n.2.

immigrant work visa, Pulatov returned alone to Uzbekistan and flew to the United States, where he was admitted on July 24, 2005. *Id.* at 103, 110 (Oral Dec. at 12, 19).

Pulatov's visa expired on October 30, 2005. Thirteen months later he filed an application seeking asylum or alternatively withholding of removal under the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT"). An IJ first rejected Pulatov's asylum request as untimely. Although noting that Pulatov offered no corroborating evidence to support his story—including documents provided by his private detectives, or hospital records that he claimed to possess while in the United States—the IJ determined that Pulatov's testimony was credible, and that Pulatov had been persecuted while in Uzbekistan. A.R. at 115 (Oral Dec. at 24). However, the IJ found that Pulatov's persecution did not occur on account of his claimed "membership in a 'social organization advocating the elimination of nasvay.'" *Id.* at 117 (Oral Dec. at 26) (quoting Pulatov's counsel). Accordingly, in addition to rejecting his petition as untimely, the IJ rejected Pulatov's asylum request on the merits; on the same basis, the IJ denied Pulatov's request to withhold removal. *Id.* at 124 (Oral Dec. at 33). The IJ then held that Pulatov was not entitled to relief pursuant to the CAT, finding that the fund, which provided "the impetus behind the alleged actions against" Pulatov, no longer exists, and thus it is not more likely than not that Pulatov would be tortured upon his return to Uzbekistan. *Id.* at 125 (Oral Dec. at 34).

On appeal to the BIA, Pulatov abandoned his claim that he was a member of a social group. Instead, he argued for the first time that his persecution was on the basis of imputed political opinion. The BIA rejected this new argument on the merits. A.R. at 4 (BIA Op. at 2). It also affirmed the IJ's

finding that Pulatov's asylum petition was untimely, and that it was not more likely than not that Pulatov would be tortured in the future. *Id.* at 3–4 (BIA Op. at 1–2). Pulatov filed a petition for review in this court.

## II. STANDARD OF REVIEW

The BIA affirmed the IJ's decision, and took up directly Pulatov's imputed- political-opinion claim. Accordingly, we review both the IJ's and the BIA's opinions. *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005). We review legal determinations de novo, and factual findings under a "substantial evidence" standard, whereby reversal is appropriate "only if the evidence compels a different result." *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008). Because the IJ found Pulatov to be credible, "we must accept the representations [he] made in the application and [his] testimony as true." *Gilaj*, 408 F.3d at 285–86.

## III. ASYLUM CLAIM

A petition for asylum must be filed within one year of an alien's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Pulatov concedes that he missed the filing deadline. Pet'r Br. at 15.[2] "We are barred from 'review[ing][] asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction.'" *Amir v. Gonzales*, 467 F.3d 921, 924

---

[2]Pulatov argues that he filed his petition on October 25, 2006—five days before the one-year anniversary of the expiration of his four-month work visa—but that a lag in the docketing of his application caused it to be stamped as received on November 15, 2006. Regardless, the asylum deadline is calculated from the date of arrival, and not from the date of the expiration of legal status.

(6th Cir. 2006) (quoting *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006)). Pulatov claims that the BIA made two material mistakes of fact in rejecting his timeliness argument.[3] He also apparently suggests that "extraordinary circumstances" excused his delay, notwithstanding a determination by the IJ to the contrary. *See* § 1158(a)(2)(D). Both arguments involve "a predominantly factual determination." *Almuhtaseb*, 453 F.3d at 748 (citation omitted); *accord Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011). Accordingly, we lack jurisdiction to consider Pulatov's claim for asylum.

## IV. WITHHOLDING-OF-REMOVAL CLAIM

Pulatov argues that he was persecuted on the basis of his imputed political opinion. An alien seeking the withholding of removal bears the burden of proof of demonstrating that his "life or freedom would be threatened in that country because of the alien's . . . political opinion." 8 U.S.C. § 1231(b)(3)(A)–(C) (incorporating by reference § 1158(b)(1)(B)). We have recognized that persecution on the basis of an imputed political opinion is grounds for withholding of removal. *Haider v. Holder*, 595 F.3d 276, 284 (6th Cir. 2010).

---

[3]Neither of the factual mistakes is material. First, the BIA stated that Pulatov "did not file his asylum application within a reasonable time after the expiration of his *immigration* status." A.R. at 3 (BIA Op. at 1) (emphasis added). The BIA should have referred to the expiration of his *non-*immigration status. Second, the BIA stated that Pulatov "did not present *any* evidence to support his implicit claim that he had a mental or physical disability that under the totality of the circumstances excuses the delay in filing his asylum application." *Id*. (emphasis added). Pulatov argues that his testimony is itself evidence of these disabilities. However, the BIA was clearly echoing the IJ's finding that Pulatov did not offer evidence to support assertions in his testimony. *See* A.R. at 112 (Oral Dec. at 21).

Pulatov first presented his imputed-political-opinion theory to the BIA. In doing so, he framed his appeal as follows: "Mr. Pulatov clearly holds a political opinion within the meaning of the relevant statutes—*that he is opposed to the corrupt totalitarian government*. And, the government persecuted him *not* because he is for regulation of nasvay, but because they impute to him an anti-government political opinion." A.R. at 12 (Resp't Br. in Supp. of Appeal at 5) (emphasis added). Pulatov now claims before this court, in contradiction to his brief to the BIA, that he was persecuted because of his pro-regulation activism. Pet'r Br. at 26 ("Pulatov's persecution was based on Pulatov's anti-nasvay activism—namely, petitioning various branches of the government to make nasvay use illegal, and giving talks and distributing pamphlets on the negative effects of nasvay use.") (internal citations omitted).[4]

We may "review a final order of removal only if . . . the alien has exhausted all administrative remedies available." 8 U.S.C. § 1252(d)(1). Under § 1252(d)(1)'s exhaustion requirement, "only claims properly presented to the BIA and considered on their merits can be reviewed." *Ramani v. Ashcroft*, 378 F.3d 554, 558–60 (6th Cir. 2004). Pulatov failed to exhaust his new imputed-political-opinion claim; the basis for his instant appeal is one that he flatly disavowed before the BIA in favor of an alternate basis for political persecution, which he now denies. Because Pulatov prevented the BIA from addressing the foundation of his instant appeal, we may not entertain his new theory as to why removal should be withheld.

---

[4]At oral argument, Pulatov claimed never to have argued that the Tashkent government was corrupt, or that his anti-corruption stance formed the basis of his imputed political opinion. These statements contradict his earlier brief to the BIA.

Pulatov argues in his reply brief that the BIA usurped the IJ's factfinding authority by finding that he offered no evidence to corroborate his theory of political corruption in Tashkent.[5] *See* 8 C.F.R. § 1003.1(d)(3)(iv) ("[T]he Board will not engage in factfinding in the course of deciding appeals."). In discussing the IJ's finding that Pulatov suffered retribution purely because of personal matters, the BIA noted that Pulatov "failed to present any persuasive corroboration to show that the government of Tashkent is involved in the sale of this legal product (na[sv]ay) in any corrupt fashion," and further stated that Pulatov "did not present persuasive testimony or other evidence to establish that his life and freedom was threatened . . . on account of an imputed political opinion." A.R. at 4 (BIA Op. at 2).

The BIA did not engage in independent factfinding. The IJ held that, at best, Pulatov suffered retribution over a personal matter between him and Tashkent officials; from this the BIA concluded,

---

[5]Pulatov argues in the alternative that, if such factfinding is permissible, then the BIA did it without providing him notice and opportunity to provide corroboration. For support he points to § 1158(b)(1)(B)(ii), which states as follows: "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence."

It is an open question whether the quoted text from § 1158, first introduced in the REAL ID Act, requires that a factfinder provide otherwise credible applicants notice and opportunity to provide corroborative evidence before its absence be held against them. *See Ren v. Holder*, 648 F.3d 1079, 1091–92 (9th Cir. 2011) ("[A credible] applicant must be given notice of the corroboration required, and an opportunity to either provide that corroboration or explain why he cannot do so."); *Chukwu v. Attorney Gen. of the U.S.*, 484 F.3d 185, 192 (3d Cir. 2007). *But see Abraham v. Holder*, 647 F.3d 626, 633 (7th Cir. 2011) (holding that § 1158(b)(1)(B)(ii) does not create an additional notice-and-opportunity requirement). However, as discussed in this section, the BIA did not act as a factfinder—it relied on findings made by the IJ—and held that Pulatov presented no evidence of a political motive. Thus, this issue of statutory construction is not before us. To the extent that Pulatov's argument concerns a lack of notice and opportunity provided to him by the IJ, that argument was not presented to the BIA, and so has not been properly exhausted.

relying on findings of fact already made by the IJ, that Pulatov could not have suffered retribution on account of an imputed political opinion. Specifically, the IJ found that Pulatov's key evidence of a motive for retribution was a report, created for him by private detectives, that linked two Tashkent officials to the manufacture of nasvay. *Cf. Marku v. Ashcroft*, 380 F.3d 982, 987 (6th Cir. 2004) (stating, in the asylum context, that a petitioner "is not expected to provide direct proof of . . . motive, but must show '*some* evidence of it, direct or circumstantial'" (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992)) (emphasis in original)). Pulatov could not provide the report to corroborate his testimony. A.R. at 264–65 (Tr. at 132–33). Nevertheless, the IJ found that even accepting his testimony regarding the detectives' report, Pulatov did not establish that the report would even have placed Tashkent officials "in a negative light in the public." A.R. at 123 (Oral Dec. at 32). Likewise, the IJ found that Pulatov submitted separate reports concerning Uzbekistan, but that none established that nasvay was illegal. *Id*. at 123–24 (Oral Dec. at 32–33). Pulatov offered no further testimony or evidence of the Tashkent government's conduct that could be construed to establish a motive for persecuting him on the basis of an imputed political opinion. *See id*. at 122–24 (Oral Dec. at 31–33). Accordingly, the BIA did not act impermissibly in referencing the findings of the IJ and in relying on those findings to conclude that Pulatov has not established that he suffered retaliation "on account of an imputed political opinion." A.R. at 4 (BIA Op. at 2). Substantial evidence does not compel us to conclude otherwise.

## V. CONVENTION-AGAINST-TORTURE CLAIM

Pulatov states that, contrary to the findings of both the IJ and the BIA, it is more likely than not that he will be tortured if forced to return to Uzbekistan. In support of this position, Pulatov reasserts the evidence he offered to both the IJ and the BIA. Pet'r Br. at 37. "We review the BIA's decision on a request for withholding of removal under the same standard regardless of whether the request was made pursuant to the INA or the CAT." *Almuhtaseb*, 453 F.3d at 749. Accordingly, the BIA's determination will be reversed only if "the evidence 'not only supports a contrary conclusion, but indeed *compels* it.'" *Id.* at 749 (quoting *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir. 2004) (emphasis in original)). Pulatov does not respond to the assertion, proffered by both the IJ and the BIA, that because the fund no longer exists, he is unlikely to be tortured in the future. A contrary conclusion is not compelled by the evidence.

## VI. CONCLUSION

For the reasons provided above, we **DISMISS** Pulatov's appeal of his asylum petition for lack of jurisdiction and **DENY** review regarding the remainder of the BIA's decision.