NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0262n.06

No. 14-3616

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 10, 2015
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ABDULRAHMAN ALAKHFASH, ) | |
| ) | |
| **Petitioner,** ) | ON PETITION FOR REVIEW |
| ) | FROM THE UNITED STATES |
| v. ) | BOARD OF IMMIGRATION |
| ) | APPEALS |
| ERIC H. HOLDER, JR., Attorney General, ) | |
| ) | **OPINION** |
| **Respondent.** ) | |
| ) | |

Before: COLE, Chief Judge; MOORE and WHITE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Abdulrahman Alakhfash, a native and citizen of Yemen, seeks judicial review of a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from a decision by an Immigration Judge ("IJ") denying his applications for asylum and withholding of removal. For the reasons set forth below, we **GRANT** the petition and **REMAND** for further proceedings consistent with this opinion.

**I. BACKGROUND**

Alakhfash "is a prominent entertainer, singer and actor in Yemen and the Arabic-speaking world." IJ Decision at 9 (AR000032). He last entered the United States in September 2011 on a visitor's visa with authorization to remain until March 14, 2012. *Id.* at 1 (AR 000024). After he remained in the United States beyond that period, removal proceedings were begun. Alakhfash applied for asylum under § 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158, and withholding of removal under § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3).

*Id.* at 3 (AR 000026). Alakhfash based his claim for asylum and withholding of removal on persecution for his political opinion. Asylum App. at 5 (AR 000273). He stated that he fears being persecuted in Yemen for (1) announcing his support for and joining the reform movement in Yemen seeking better education and justice, and (2) for singing songs that fundamentalist Muslims and their allies perceive as disrespecting the Qur'an, which has led those groups to accuse him of being an apostate. Asylum App. Attachment to Form I-589 at 1 (AR 000280); Hr'g Tr. at 22–23 (AR 000108–0109).

Alakhfash alleged that he had suffered past persecution based on the following events. Alakhfash testified that in 2009, after he entered a mosque in Hamdan and was recognized, the speaker at Friday prayer started saying that "artists are infidels, they are from hell." Hr'g Tr. at 35 (AR 000121). As Alakhfash left the mosque, someone hit him on the back of the head with a shoe, and someone else had slashed the tires on the right side of his car. *Id.* at 35–36 (AR 000121–0122). In March 2011, Alakhfash publicly announced his support for the reform movement and began speaking at rallies and making public statements in support of the movement. *Id.* at 25–26 (AR 000111–0112). When he tried to join demonstrators in University Square for one rally, Alakhfash was beaten with sticks by men he did not know, until onlookers came to his aid and the men ran away. *Id.* at 26 (AR 000112); Asylum App. Att. to Form I-589 (AR 000280). The men told him that he "humiliated [the] Qur'an," and that he "sang against the religion." Hr'g Tr. at 26 (AR 000112). He was not seriously injured in either the 2009 or 2011 attacks. *Id.* at 55 (AR 000141). Alakhfash also "began receiving threatening and harassing telephone calls from blocked numbers on [his] phone" and "[his] mother and wife received

multiple phone calls threatening [his] life." Asylum App. Att. to Form I-589 (AR 000280–0281); Hr'g Tr. at 56 (AR 000142). At the end of April 2011, a television interview aired in Yemen in which Alakhfash criticized fundamentalist Muslims who opposed the then-current revolution. Hr'g Tr. at 28 (AR 000114). The next day, unknown assailants sprayed his home with machinegun fire while his wife and children were inside (Alakhfash was in the United States). *Id.* at 29–30 (AR 000115–0116). Although his family was unharmed, they were forced to relocate after the local police said that they could not protect them. *Id.* at 29–30, 32 (AR 000115–0116, 000118).

When asked whom he fears specifically, Alakhfash said he fears "the extremist Muslims and Al-Qaeda organization." *Id.* at 39 (AR 000125). Alakhfash explained that there is no "government" in place right now (in 2012) in Yemen, but that the "actual government is being controlled and run by the Muslims" who are also working with Al-Qaeda and tribal leaders. *Id.* at 66 (AR 000152). Alakhfash also fears General Ali Mohsen, a powerful military figure in Yemen, because he believes that Mohsen does not like his music and what it represents. *Id.* at 40 (AR 000126). Alakhfash once felt protected under former President Ali Abdullah Saleh, but that is no longer the case since fundamentalist groups have taken control of Yemen. *Id.* at 38 (AR 000124).

The IJ determined that Alakhfash was generally credible. IJ Decision at 10 (AR000033). The IJ appeared to question whether the television interview or the attack on Alakhfash's home occurred because Alakhfash had not submitted corroborating evidence from his family of the attack. IJ Decision at 10, 12–13, 15–16 (AR 000033, 000035–0036, 000038–0039). The IJ also

noted the lack of corroborating documents for the two physical attacks on Alakhfash or the threatening phone calls. *Id.* at 11–12 (AR 000034–0035). However, the IJ found that, assuming that the events recounted by Alakhfash occurred, they did not establish past persecution. *Id.* at 11 (AR 000034). The IJ also noted that Alakhfash "could not identify who the perpetrators [we]re" of the two physical attacks on him. *Id.*

The IJ also found that Alakhfash had not established a well-founded fear of future persecution. The IJ noted that following the attack on his home, a local Sheik, Rassam Hassan Ali Rassam, helped Alakhfash's wife and children relocate and offered them protection, and that Alakhfash returned to Yemen once after the shooting incident because of his mother's health and "was able to secure some safe keeping from Sheik Rassam" and therefore was not harmed. *Id.* at 16 (AR 000039); Asylum App. Att. to Form I-589 (AR 000281). The IJ also referred to the fact that Alakhfash's brother, who Alakhfash stated in his application had been detained several times after speaking out against the government, was still in the military and "is not going under any harm in today's Yemen." IJ Decision at 17 (AR 000040). The IJ further noted that Alakhfash "was a friend or on friendly terms with the former president, Mr. Saleh," and that Alakhfash had testified that "a lot of power . . . [is still held] by the family of the former president of Yemen." *Id.* at 18 (AR 000041). The IJ concluded that he believed Alakhfash just "fears general violence and terrorism in today's Yemen," and that "there is no pattern or practice of persecution of people similarly situated to him." *Id.* at 19–20 (AR 000042–0043).

Finally, the IJ denied Alakhfash withholding of removal. The IJ explained that because Alakhfash did not demonstrate a well-founded fear of future persecution, "ipso facto he has

certainly not demonstrated that it is more likely than not he would be persecuted in today's Yemen." *Id.* at 20 (AR 000043).

The BIA agreed that the past events Alakhfash described did not rise to a level of persecution under the INA, referring to *Haider v. Holder*, 595 F.3d 276 (6th Cir. 2010), and *Mikhailevitch v. INS*, 146 F.3d 384 (6th Cir. 1998). BIA Decision at 2 (AR 000004). The BIA found that the events alleged by Alakhfash were more akin to "a few isolated incidents of verbal harassment or intimidation" that we held insufficient to establish persecution in *Mikhailevitch*. *Id.* The BIA also noted that Alakhfash "was not subject to any of the actions set forth by the court in *Haider*" as examples of persecution. *Id.* The BIA rejected Alakhfash's argument that the IJ failed to follow this Circuit's precedent in *Ouda v. INS*, 324 F.3d 445 (6th Cir. 2003). *Id.* The BIA noted that, in *Ouda*, the family established persecution by being ordered by the Kuwaiti government to leave because they were perceived as enemies of the country, a circumstance not found in this case, and unlike in Alakhfash's case, the father in *Ouda* had been held at gunpoint, threatened and beaten, deprived of food, water and a livelihood, and had a significant portion of his retirement funds confiscated. *Id.* Finally, the BIA found that, "for the reasons set forth by the IJ, . . . [Alakhfash] did not meet his burden of establishing that he has a well-founded fear of future persecution or a clear probability of persecution if he must return to Yemen." *Id.* The BIA noted that "there appears no reason why [Alakhfash] could not move to an area controlled by his sheik friend, who is also protecting his family." *Id.* n.1.

Alakhfash now argues that the IJ and the BIA failed to apply correctly the Sixth Circuit's precedent on persecution, and that the BIA failed to follow its own precedent regarding the

guidelines to be applied in asylum cases when the applicant is a public figure. A panel of this court has granted a stay of removal pending our consideration of Alakhfash's petition for review.

## II. ANALYSIS

### A. Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* We review the factual findings of both decisions to determine whether they are supported by substantial evidence, and the administrative findings of fact are conclusive unless the evidence *compels* a contrary conclusion. *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009). We review legal conclusions de novo, although we must defer to reasonable interpretations of the INA by the BIA. *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005).

### B. Credibility Determination

One preliminary issue first. As previously mentioned, although the IJ found Alakhfash generally credible, the IJ questioned whether the shooting of Alakhfash's house or the television interview preceding it occurred because Alakhfash did not submit corroborating evidence from his family about the shooting incident or the interview.[1] IJ Decision at 10, 12–13, 15–16 (AR

---

[1]We note that Alakhfash did present photos of what he testified was evidence of bullet holes in his home, and a letter from Sheik Rassam Hassan Ali Rassam stating that Alakhfash's

000033, 000035–0036, 000038–0039). However, the BIA did not consider this issue, and instead held that the events Alakhfash recounted did not rise to the level of past persecution. BIA Decision at 2 (AR 000004). We have held that the following procedure applies in circumstances such as these: "[W]hen an IJ or the BIA expresses suspicion about an applicant's lack of credibility but the BIA fails to make an explicit adverse determination and instead denies relief on some other basis, we will assume that the applicant was credible in order to review the actual grounds for the ruling. . . . If we conclude that the stated basis for denying relief was supported by substantial evidence, further review is foreclosed. If the evidence compels the opposite result, however, we will remand for a credibility determination." *Haider*, 595 F.3d at 282.

## C. Alakhfash's Asylum Claim

The resolution of an asylum claim "involves a two-step inquiry: (1) whether the applicant qualifies as a 'refugee' as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant merits a favorable exercise of discretion by the Attorney General." *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (internal quotation marks omitted). The applicant bears the burden of establishing that he or she is a refugee. *Id.* "Refugee" is defined "as an alien who is unable or unwilling to return to his home country 'because of persecution or a well-founded fear

---

family confirmed the incident. Hr'g Tr. at 42–48, 79–85; Asylum App. Att. to Form I-589 (AR 000296–0298, 000331–0338). The IJ discounted the photos because he determined that "you can't really see what's on them." Hr'g Tr. at 42 (AR 000128). The IJ also determined that, because Alakhfash had submitted two copies of the letter with some discrepancies as to the date and signature, the letters were not sufficient. IJ Decision at 15–16 (AR 000038–0039). The IJ's explanation is not particularly clear on this issue.

of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (quoting 8 U.S.C. § 1101(a)(42)(A)). An applicant for asylum thus has two avenues to "establish eligibility for asylum: (1) the applicant can prove that he or she has suffered past persecution, or (2) the applicant can show that he or she has a well-founded fear of future persecution." *Id.*

### 1. Protected ground: political opinion

The events recounted by Alakhfash establish that he alleged persecution on the basis of a recognized protected category, political opinion. It is well established that being perceived as anti-government is a protected political ground for purposes of asylum and withholding of removal. *Haider*, 595 F.3d at 284.

### 2. Past persecution

"The INA does not define 'persecution.'" *Haider*, 595 F.3d at 286. We have held that persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. Examples of persecution include: "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Haider*, 595 F.3d at 286–87. We have held that a single beating, without evidence of serious physical harm, may not rise to the level of persecution. *Gjokic v. Ashcroft*, 104 F. App'x 501, 505–06 (6th Cir. 2004). However, an applicant does not *necessarily* have to demonstrate that he suffered serious physical harm to establish past persecution. *Stserba v. Holder*, 646 F.3d 964, 972 (6th Cir. 2011) ("It is well established, however, that physical harm is

8

not an essential feature of persecution."). "[U]nfulfilled threats" alone can constitute past persecution, albeit only in exceptional cases such as where the threats are "of a most immediate and menacing nature." *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) (internal quotation marks omitted).

We hold that the IJ and BIA's findings that Alakhfash failed to establish past persecution were not supported by substantial evidence and that the events alleged by Alakhfash, if true, *compel* a finding of past persecution. First, the IJ and BIA did not sufficiently consider the two incidents where Alakhfash was physically attacked *in conjunction with* the shooting of his home after his television interview aired. IJ Decision at 11 (AR 000034); Hr'g Tr. at 28 (AR 000114). We have held that the "IJ (and this court) must evaluate past persecution based on the overall context of the applicant's situation. That is, the IJ must view the evidence in the aggregate, as a collection of harmful events, even though they may not qualify individually as persecution, [that] may taken together constitute persecution." *Haider*, 595 F.3d at 287 (internal quotation marks omitted).

Viewed cumulatively, the events recounted by Alakhfash show a pattern of linked, escalating incidents that included physical harm, serious intimidation—the shooting of his home while his family was inside—and multiple phone calls threatening his life. The three incidents are *linked* by the fact that each was precipitated by his public advocacy for the reform movement or music, and the last two events are linked temporally as well. Alakhfash thus surpassed the threshold for persecution identified by *Mikhailevitch.* The attack on Alakhfash's home in and of itself is particularly serious. With this attack, the phone call threats to Alakhfash's life no longer

9

were simply "unfulfilled threats"; Alakhfash's persecutors took a significant and dangerous step in acting on those threats. Alakhfash's family very easily could have been injured or killed in the attack. That the attackers did not succeed does not lessen the terror the attack caused. Although Alakhfash's experience does not fit neatly into one of the examples of persecution listed in *Haider*, we did not purport to describe exhaustively what actions qualify as persecution. *Haider*, 595 F.3d at 286–87; *see also Kukalo v. Holder*, 744 F.3d 395, 400 (6th Cir. 2011) (citing *Haider* and recognizing that "the court gave no indication that this was an exhaustive list").

Second, an asylum applicant does not necessarily need to be able to identify his or her attackers or persecutors in order to establish past persecution. 8 C.F.R. § 208.13(b)(1) requires only that the applicant establish that the persecution is "on account of" a protected basis. That is, the focus is on the *motive* for the persecution. Here, Alakhfash has established that the events he alleged were motivated by his support for the reform movement and his support for music. In the 2009 incident, Alakhfash testified that he was hit by the shoe shortly after the Friday prayer speaker began disclaiming Alakhfash's music. The other two incidents occurred close in time to Alakhfash publicly speaking out in favor of the reform movement. Alakhfash "was not merely a victim of indiscriminate mistreatment," but rather he was "specifically targeted" for his beliefs. *Haider*, 595 F.3d at 287 (internal quotation marks omitted). The IJ thus erred in citing this additional factor as supporting its finding that Alakhfash did not suffer past persecution.

In sum, we hold that the events recounted by Alakhfash, if true, compel a finding of past persecution. Thus, we must "remand to the BIA for a proper credibility determination." *Haider*, 595 F.3d at 288.[2]

### 3. Discretionary grant of asylum

The BIA may still exercise its discretion to deny an applicant asylum even if the applicant establishes that she or he qualifies as a refugee. *Gilaj*, 408 F.3d at 288. "When an applicant has satisfied his or her burden of establishing past persecution based on a statutory ground so as to be eligible for a grant of asylum, the likelihood of present or future persecution then becomes relevant as to the [BIA's] exercise of discretion." *Id.* (internal quotation marks omitted). An applicant who has suffered past persecution is entitled to a presumption of a well-founded fear of future persecution. *Id.* (citing 8 C.F.R. § 1208.13(b)(1)). "The government may rebut that presumption through establishing by a preponderance of the evidence either that (1) since the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted on one of the statutory grounds if he or she were to return, or (2) the applicant could avoid future persecution

---

[2]On remand, we note that the BIA may wish to consider whether Alakhfash can provide corroborating evidence of the incidents he alleged. The IJ held Alakhfash's hearing on the same day that the IJ denied Alakhfash asylum. Some circuits require the IJ to provide an applicant notice and an opportunity to provide corroboration or to explain the lack thereof if the IJ determines corroboration is necessary. *See, e.g.*, *Yaogang Ren v. Holder*, 648 F.3d 1079, 1091–92 (9th Cir. 2011); *Chukwu v. Att'y Gen. of the United States*, 484 F.3d 185, 192–93 (3d Cir. 2007). However, other circuits do not. *See, e.g.*, *Chuilu Liu v. Holder*, 575 F.3d 193, 198–99 (2d Cir. 2009); *Rapheal v. Mukasey*, 533 F.3d 521, 529 (7th Cir. 2008). "It is an open question" in our Circuit whether "the REAL ID Act[] requires that a factfinder provide otherwise credible applicants notice and opportunity to provide corroborative evidence before its absence be held against them." *Pulatov v. Holder*, 516 F. App'x 455, 459 n.5 (6th Cir. 2013).

by moving to another part of his or her country of nationality, and it would be reasonable to expect the applicant to do so." *Id.* (citing 8 C.F.R. § 1208.13(b)(1)(i)(A)-(B)). Alternatively, an applicant who has established past persecution "may be granted asylum if the applicant 'has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution' or 'has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.'" *Id.* (quoting 8 C.F.R. § 1208.13(b)(1)(iii)(A)-(B)).

The IJ did not consider these issues because it found that Alakhfash did not suffer past persecution. If the BIA determines on remand that Alakhfash is credible, he is entitled to a rebuttable presumption of a well-founded fear of future persecution. The BIA should then consider whether the government can rebut this presumption or whether Alakhfash can establish an alternative basis for the discretionary grant of asylum. *See Gilaj*, 408 F.3d at 288–89.

We highlight here several findings by the IJ and BIA on future persecution not supported by substantial evidence so that these errors are not repeated on remand. The IJ did not give sufficient weight to Alakhfash's status as a well-known celebrity in Yemen in holding that Alakhfash could return safely to Yemen. It is true that Alakhfash returned to Yemen once after the shooting incident because of his mother's health, and that Sheik Rassam Hassan Ali Rassam helped Alakhfash's wife and children relocate and offered them protection. IJ Decision at 16 (AR 000039); Asylum App. Att. to Form I-589 (AR 000281). However, the IJ and BIA erred in conflating the situation of Alakhfash's wife and children, who are not recognizable celebrities, with Alakhfash's own situation. Nor did Alakhfash's family publicly speak out in favor of the

revolution or music. Moreover, Alakhfash testified that during his return to Yemen, he was under the protection of Ali Rassam's guards and could not safely be in public. Hr'g Tr. at 34 (AR 000120) ("I felt like I was in a prison because I was not able to move."); *id.* at 79 (AR 000165) (noting that Ali Rassam's son met him at the airport with guards when he arrived in Yemen); Asylum App. at 8 (AR 000276) ("I was under constant guard when I was in Yemen and could not appear in public without fear for my safety."). Thus, the IJ's and BIA's findings that Alakhfash could safely return to Yemen are not supported by substantial evidence. *Cf. Al-Ghorbani v. Holder*, 585 F.3d 980, 999 (6th Cir. 2009) ("[T]he continuing safety of Abdulmunaem and Salah's other family members in Yemen does not have the significance that the BIA gave to this factor. These other family members did not seek to marry outside of their class, nor did they help Abdulmunaem marry Najla after the General refused to give his permission. As previously discussed, one of the characteristics of the social group to which Abdulmunaem and Salah belong is active opposition to the paternalistic marriage traditions in Yemen. The Al–Ghorbani family members not involved with Abdulmunaem's marriage to Najla do not share this characteristic. Their continued safety thus does not demonstrate that Abdulmunaem and Salah could return to Yemen without the likelihood of persecution."). Similarly, the IJ's discussion of Alakhfash's brother and his ability to remain a member of the military despite supporting the revolution is not a fair comparator given that Alakhfash's brother is not a well-known celebrity. IJ Decision at 17–18 (AR 000040–0041).[3]

---

[3]We note that the specific case cited by Alakhfash regarding the BIA's own precedent regarding public figures, *Matter of D-I-M-*, 24 I. & N. Dec. 448 (BIA 2008), is not on point. In

We also note that country conditions in Yemen have evolved—and deteriorated—considerably since Alakhfash first applied for asylum. Although we cannot take such developments into account sua sponte, the BIA may wish to consider this issue on remand, particularly in light of the fact that (1) the IJ noted that one reason it found Alakhfash did not have a well-founded fear is that Alakhfash could obtain protection from former President Saleh's allies and family who still retained power in Yemen, a finding that is by no means still clearly true today, and (2) that the IJ stated that "[o]bviously if the country is ever taken over by the fundamentalist Muslims or by the Al-Qaeda organization, he might be in danger." *Id.* at 18–19 (AR 000041–0042).

## D. Alakhfash's Withholding of Removal Claim

Section 241(b)(3) of the INA "provides that 'the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Gilaj*, 408 F.3d at 289 (quoting 8 U.S.C. § 1231(b)(3)). To prevail on a request to withhold removal, an applicant must show a clear probability that he or she would be subject to persecution upon return to the country in question. *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010).

---

that case, the issues to be resolved did not concern whether the applicant was a public figure. Rather, the BIA remanded the case because the IJ had erred by failing to shift the burden to the government to prove that the applicant could safely relocate in Kenya after the IJ determined that the applicant had shown past persecution. *Id*. at 451.

The IJ relied solely on its asylum finding in denying Alakhfash withholding of removal. As we have held that the events alleged by Alakhfash compel a finding of past persecution, Alakhfash is also entitled to a presumption that "his life or freedom would be threatened in the future" if the BIA finds him to be credible on remand. *Haider*, 595 F.3d at 283. "That presumption can be rebutted if an IJ finds that there has been a fundamental change in circumstances in the proposed country of removal or that the applicant could reasonably be relocated to another part of that country, such that his life or freedom would not be threatened." *Id.* at 283–84. On remand, therefore, "[t]he BIA should then consider whether the government can rebut the presumption, and if so, whether [Alakhfash] can prove the likelihood of future threat to life or freedom." *Id.* at 288 (internal citation omitted).

## III. CONCLUSION

For the reasons set forth above, we **GRANT** the petition and **REMAND** for further proceedings consistent with this opinion.