*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0136a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MYRON KUKALO, GANNA KUKALO,

               *Petitioners,*

    *v.*

ERIC H. HOLDER, JR., United States Attorney General,

               *Respondent.*

Nos. 09-3338/4289

>

On Petition for Review of an Order from the
United States Board of Immigration Appeals.
Nos. A070 865 956; A070 865 957.

Decided and Filed:  April 13, 2011[*]

Before:  MARTIN, GIBBONS, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:**  Margaret Wong, MARGARET WONG & ASSOCIATES CO., LPA, Cleveland, Ohio, for Petitioners.  Christopher McGreal, James A. Hunolt, Jonathan Robbins, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**AMENDED OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.   In this consolidated action, petitioners–appellants Myron and Ganna Kukalo appeal a final order of the Board of Immigration Appeals ("BIA"), denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), as well as an

---

[*] This amended decision was originally issued as an "unpublished amended decision" filed on April 13, 2011.  On May 16, 2011, the court designated the amended opinion as one recommended for full-text publication.

order of the BIA denying their motion to reopen for an adjustment of status. For the reasons that follow, we deny the Kukalos' petitions for review.

I.

Myron and Ganna Kukalo (collectively, the "Kukalos") are husband and wife and citizens of the Ukraine. They entered the United States on February 10, 1994, on B-1 non-immigrant visas with authorization to remain for a temporary period not to exceed August 9, 1994. After the expiration of their visas, Myron timely filed an application for asylum on October 3, 1994, and Ganna was included on the application as a derivative. On July 28, 2004, the Department of Homeland Security ("DHS") served the Kukalos with Notices to Appear before the Immigration Court, charging them as subject to removal from the United States pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), and INA § 101(a)(15), 8 U.S.C. § 1101(a)(15). With this action, DHS referred the Kukalos' asylum case to the Immigration Court. During their removal hearings, both Myron and Ganna conceded removability but requested relief based on asylum, withholding of removal, and CAT. In the meantime, Myron's employer, Piper Plumbing, Inc., filed an I-140 immigrant petition for alien workers with a priority date of January 13, 2003. The petition was approved on January 30, 2007, and indicated "that [Myron Kukalo] is in the United States and will apply for adjustment of status." The Notice of Action approving the petition stated that the information submitted with the petition showed that Myron was "not eligible to file an adjustment of status application at this time." The Kukalos later filed I-485 applications for adjustment of status.

On May 25, 2007, Immigration Judge William Evans, Jr. ("IJ") heard both Myron and Ganna's application for asylum, withholding of removal, and relief under CAT. Myron testified for both of the Kukalos, and the IJ found Myron's testimony credible. In his testimony Myron revealed several grounds on which he felt the court could find evidence of past persecution as well as a well-founded fear of future persecution. First, a former KGB worker who lived in Myron's village allegedly threatened Myron on three occasions. Myron testified, "He said that people like me

should not live in this world," a threat Myron attributed to his "political thinking." Second, Myron testified that because he owned land, he received phone calls and one visit from people he suspected to be associated with mafia groups. These calls largely involved requests for money, but Myron never provided them with any money. Myron suffered no instances of physical harm. Myron also testified that his future in the Ukraine "would be same thing that it was before," indicating a fear of similar threats from the people who had threatened him before.

In addition to Myron's testimony, the Kukalos submitted a letter from a friend in the Ukraine detailing the unrest and violence in the country, the Ukraine Country Reports on Human Rights Practices 2006, and a number of published reports regarding crime and corruption in the Ukraine. Myron also submitted a written statement with his asylum application discussing the same information offered in his testimony before the IJ.

Based on the testimony and the exhibits, the IJ found that the evidence was insufficient "to demonstrate either past persecution or a well-founded fear of future persecution based on race, religion, nationality, membership in a particular social group or political opinion." The IJ found that the evidence proved Myron had experienced "attempts at extortion" and that the Ukraine was "experiencing some degree of lawlessness," but "[n]either the general condition of lawlessness nor criminal extortion or harassment or threats []rise to the level of persecution." The IJ found no evidence that the Kukalos had been victims of persecution in the past or that the Kukalos had a well-founded fear of persecution in the future "because the only fears expressed by the [Kukalos] are that they will be subject to the same treatment on their return to Ukraine as they've experienced." The IJ found the Kukalos failed to sustain the burden of establishing their claim for asylum and thus necessarily failed to meet the burden for withholding of removal. They also failed to provide any evidence that they would be subject to torture required for their CAT protection claim. Furthermore, the IJ held that the Kukalos failed to establish their eligibility for voluntary departure.

The BIA issued a separate opinion on March 20, 2009, dismissing the Kukalos' appeal of the IJ decision.  The BIA rejected Myron's contention that he suffered past persecution or had a well-founded fear of future persecution.  The BIA found that "the unfulfilled threats from an individual in his neighborhood and the extortionist demands from persons [Myron] believes were affiliated with the mafia were not severe enough to qualify as persecution."  Moreover, the BIA held that because Myron failed to establish eligibility for asylum, he necessarily could not establish withholding of removal or protection under CAT.  The BIA went on to say, "In any event, the respondent has failed to meaningfully appeal the Immigration Judge's denial of his withholding of removal and CAT applications."

On March 31, 2009, the Kukalos filed a motion to reopen to apply for adjustment of status, claiming eligibility for adjustment under INA § 245(a), 8 U.S.C. § 1255(a). This motion was based on the I-140 that was filed by Piper Plumbing, Inc., on behalf of Myron with a priority date of January 13, 2003, and was approved by DHS on January 30, 2007.  Immigrations and Customs Enforcement ("ICE") opposed the motion, arguing that the Kukalos had failed to make a *prima facie* showing of eligibility for relief in order to qualify for reopening.  The BIA denied the Kukalos' motion on September 30, 2009, on the grounds that they were "unable to establish prima facie eligibility for adjustment of status."  The BIA noted: (1) the Kukalos' lawful nonimmigration status expired on August 9, 1994; (2) their asylum application was not filed until October 3, 1994; and (3) a visa petition under INA § 203(b)(3)(A)(iii) with a priority date of January 13, 2003, was approved in January 2007.  The BIA found that the Kukalos had "not adequately explained why they believe that a government delay in processing an asylum application which they concede was filed after their lawful nonimmigrant status expired provides an exception to the continuous lawful status requirement for section 245 of the [INA]."  Thus, the BIA denied their motion.

The Kukalos now appeal the March 20, 2009, and September 30, 2009, BIA decisions.  After briefing, these cases were consolidated on July 29, 2010.

II.

We first address the appeal of the BIA's March 20, 2009, denial of the Kukalos' applications for asylum, withholding of removal, and CAT protection. Where the BIA reviewed the IJ's decision *de novo* and issued a separate opinion, we review the BIA's opinion as the final agency determination. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007) (citing *Grijalva v. Gonzalez*, 212 F. App'x 541, 547 (6th Cir. 2007)). Questions of law are reviewed *de novo*, but we give substantial deference to the BIA's interpretations of the INA and its accompanying regulations. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). The BIA's factual findings are reviewed under the deferential substantial evidence standard and "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 388 (6th Cir. 1998) (internal quotation marks omitted) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Under this standard, we will reverse if the evidence presented "'not only supports a contrary conclusion, but indeed *compels* it.'" *Id.* (quoting *Klawitter v. I.N.S.*, 970 F.2d 149, 152 (6th Cir. 1992)). We do not reverse simply on the grounds that we would have decided the matter differently. *Koliada v. I.N.S.*, 259 F.3d 482, 486 (6th Cir. 2001). Rather, we look to the evidence presented to determine if "a reasonable factfinder would have to conclude" that the Kukalos established their claims for asylum, withholding of removal, or protection under CAT. *See Elias-Zacarias*, 502 U.S. at 481.

A.

An applicant for asylum bears the burden of establishing that he is a "refugee" as defined by the INA. 8 U.S.C. § 1158(b)(1)(B); *Koliada*, 259 F.3d at 486–87. In order to qualify for asylum, the Kukalos must establish that they qualify as refugees "'either because [they have] suffered actual past persecution or because [they have] a well-founded fear of future persecution.'" *Koliada*, 259 F.3d at 487 (quoting 8 C.F.R. § 208.13(a)–(b)).

Establishing that harassment rose to the level of "persecution" is not an easy task. *See Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) ("The numerous decisions

rendered by the various panels of this court upon review of BIA decisions on applications for asylum make clear that the conduct on which the application for asylum is based must go beyond what might reasonably be characterized as mere harassment in order to rise to the level of persecution."). Furthermore, demonstrating that the evidence *compels* this court to find that persecution occurred is even more difficult. We conclude that the Kukalos failed to present evidence of such persecution, past or future.

To determine whether past persecution occurred, we evaluate the overall context of the applicant's situation and view the evidence in the aggregate. *Haider v. Holder*, 595 F.3d 276, 287 (6th Cir. 2010) (citing *Gilaj*, 408 F.3d at 285; *Stenaj v. Gonzales*, 227 F. App'x 429, 433 (6th Cir. 2007)). "Persecution must rise above the level of harassment or discrimination without physical punishment, infliction of harm, or significant deprivation of liberty." *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007) (citing *Mikhailevitch*, 146 F.3d at 390). Furthermore, "persecution . . . 'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.'" *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (quoting *Mikhailevitch*, 146 F.3d at 390). In *Haider*, this court noted, "Typically, though, the '[t]ypes of actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Haider*, 595 F.3d at 286–87 (quoting *Zacarias v. Gonzales*, 232 F. App'x 458, 462 (6th Cir. 2007)). Although the court gave no indication that this was an exhaustive list, Myron's factual allegations do not resemble any of these examples, nor do they rise beyond mere harassment. Furthermore, the Kukalos must establish that the previous abuse was a result of their membership in a protected category, which is only tenuously suggested by the record. *Mohammed*, 507 F.3d at 371.

Myron presented credible testimony of a few instances of threats and requests for money. These encounters do nothing to show that he was "specifically targeted" and not "merely a victim of indiscriminate treatment." *Gilaj*, 408 F.3d at 285. In fact, it appears

that these incidents were a result of merely random criminal acts. *See Lumaj v. Gonzales*, 462 F.3d 574, 577–78 (6th Cir. 2006) (noting that because an incident was isolated, with "no evidence . . . that the attack was in any way more than a random criminal act," it was less likely to be sufficient for a finding of persecution). He and Ganna experienced no physical harm or threats of any specific consequence. Because something more is required to prove past persecution, the Kukalos have failed to establish that this court should be compelled to find that they experienced past persecution as a result of their political beliefs. We uphold the decision of the BIA with respect to this prong and find that the Kukalos experienced no past persecution for the purposes of their asylum application.

Because the Kukalos have failed to establish past persecution, they must independently establish a well-founded fear of future persecution. *Id.* at 578. A well-founded fear of future persecution is established by: (1) a fear of persecution in one's home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) a reasonable possibility of suffering persecution should one return; and (3) an unwillingness or inability to return to that country due to the fear. *Pilica*, 388 F.3d at 950. This "well-founded fear" must be both subjectively genuine and objectively reasonable. *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007).

The Kukalos rely on the same evidence to establish their fear of future persecution that laid the unstable foundation for their claim of past persecution. The evidence presented—including a letter from a friend in the Ukraine, the Ukraine Country Reports on Human Rights Practices, a number of published reports regarding crime and corruption in the Ukraine, and a statement written by Myron—offers little more than an impression of general crime and lawlessness. Isolated incidents unrelated to any protected status do not compel us to find that the Kukalos had a well-founded fear of future persecution. We therefore affirm the decision of the BIA to reject the Kukalos' application for asylum because the record does not compel a finding of past persecution or a well-founded fear of future persecution upon their return to the Ukraine.

B.

The BIA held that Myron "failed to meaningfully appeal the Immigration Judge's denial of his withholding of removal and CAT applications." Furthermore, the BIA determined that "[b]ecause of the respondent's failure to establish eligibility for asylum, he necessarily cannot 'satisfy the more onerous burden[s] for withholding of removal [and] . . . the Convention Against Torture.'"[1]

The BIA did not explain how Myron failed to meaningfully appeal his withholding of removal and CAT protection claims. In the Kukalos' brief in support of their appeal of the IJ's decision, for their claims for withholding of removal and CAT protection, they simply rely on the evidence presented under their claim for asylum, stating "[f]or the reasons set forth herein, Respondents have met the higher standard for withholding of removal . . . . [and] relief under the Convention Against Torture is also warranted." Whether these statements of reliance on earlier arguments present a meaningful appeal is questionable, but answering this question is unnecessary because the evidence fails to compel us to find that Myron was entitled to relief under either withholding of removal or CAT.

To establish a claim for withholding of removal, the petitioner must show "a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica*, 388 F.3d at 951 (citing *I.N.S. v. Stevic*, 467 U.S. 407, 413 (1984)). Because the burden for establishing a claim for withholding of removal is "a more stringent burden than what is required on a claim for asylum," and because the Kukalos failed to establish their claim for asylum, it follows that the Kukalos "also cannot satisfy the more onerous burden for withholding of removal." *See Kaba v. Mukasey*, 546 F.3d

---

[1] As a preliminary matter, family members are not granted derivative status with respect to withholding of removal. Thus we do not review Ganna Kukalo's claim for withholding of removal. *See Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 545 (6th Cir. 2003) ("Unlike an application for asylum, however, a grant of an alien's application for withholding is not a basis for adjustment to legal permanent resident status, family members are not granted derivative status, and it only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country."). Regardless, because her evidence and claims were the same as Myron's, and because we decline to grant Myron's claim, whether derivative status extended to her claims for withholding from removal and CAT protection is irrelevant.

741, 751 (6th Cir. 2008) (citing and quoting *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005); *Pilica*, 388 F.3d at 951; *Koliada*, 259 F.3d at 489).

The Kukalos similarly fail to meet their heavy burden of proof under CAT. To obtain relief under CAT, the petitioner must prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Pilica*, 388 F.3d at 951 (quoting 8 C.F.R. § 208.16(c)(2)). Although it may be the case that the inability to establish an asylum claim does not necessarily preclude relief under CAT, *see Kamalthas v. I.N.S.*, 251 F.3d 1279, 1293 (9th Cir. 2001), it is not easy to overcome such a barrier. *See, e.g.*, *Liti*, 411 F.3d at 641 ("[B]ecause the Litis failed to establish eligibility for asylum, they also cannot meet the heightened requirements for relief under CAT."). The Kukalos' brief states that they have established that there is a clear probability that Myron would be tortured by the man who previously threatened him or by members of local corrupt organizations upon his return to the Ukraine, but the brief offers no evidence to support such a claim beyond that used to buttress the claim for asylum. Accordingly, this assertion fails to compel us to find that the Kukalos are entitled to relief under CAT.

We affirm the decision of the BIA and deny the Kukalos' claims for withholding of removal and CAT protection.

### III.

Second, we address the BIA's September 30, 2009, denial of the Kukalos' motion to reopen. As stated above, questions of law are reviewed *de novo*, but we give substantial deference to the BIA's interpretations of the INA and its accompanying regulations. *Khalili*, 557 F.3d at 435. The denial of a motion to reopen a removal order is reviewed for an abuse of discretion, *Denko v. I.N.S.*, 351 F.3d 717, 723 (6th Cir. 2003), but the BIA has broad discretion in deciding whether to grant or deny a motion to reopen, *Bi Feng Liu v. Holder*, 560 F.3d 485, 489 (6th Cir. 2009) (citing *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992)). A denial of a motion to reopen will constitute an abuse of discretion if the denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious

discrimination against a particular race or group." *Balani v. I.N.S.*, 669 F.2d 1157, 1161 (6th Cir. 1982).

"The decision to grant or deny a motion to reopen . . . is within the discretion of the [BIA] . . . ." 8 C.F.R. § 1003.2(a). "A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2(c)(1). The BIA may deny a motion to reopen because "the movant has not established a prima facie case for the underlying substantive relief sought." *I.N.S. v. Abudu*, 485 U.S. 94, 104 (1988). This was the precise ground for denial in this case. The Kukalos sought the underlying substantive relief of an adjustment of status pursuant to INA § 245(a), 8 U.S.C. § 1255(a). This provision entitles the Attorney General to adjust the status of a nonimmigrant to that of a person admitted for permanent residence. Part of establishing *prima facie* eligibility for this adjustment of status involves maintenance of lawful status. Section 245(c)(2) of the INA, 8 U.S.C. § 1255(c)(2), states that subsection (a) shall not be applicable to an alien "who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." There is an exception to this rule, however, for an alien who is eligible to receive an immigrant visa under a labor certification; INA § 245(k)(2)(A), 8 U.S.C. § 1255(k)(2)(A), states that, "notwithstanding subsection (c)(2)," subsection (a) shall not be applicable to an alien who, "for an aggregate period exceeding 180 days–(A) failed to maintain, continuously, a lawful status." The regulations define the parenthetical phrase "no fault of his or her own or for technical reasons" found in subsection (c)(2) to include "[a] technical violation resulting from inaction of the Service (as for example, where an applicant establishes that he or she properly filed a timely request to maintain status and the Service has not yet acted on that request)." 8 C.F.R. § 1295.1(d)(2)(ii). In addition, "[a]n individual whose refugee or asylum status has expired through passage of time, but whose status has not been revoked, will be considered to have gone out of status for a technical reason." *Id.*

The Kukalos claim that the BIA abused its discretion because they can adjust their status under INA § 245 based on Myron's approved I-140 and, thus, established a *prima facie* case for the underlying substantive relief. They argue that the fourteen-year limbo on their application for asylum (although the application was filed after their lawful immigration status expired) constituted a "technical violation" resulting from inaction and that this violation allows them to be eligible for adjustment of status. The Kukalos contend that they "filed their asylum application within 180 days of the expiration of their visas and the application remained pending either with DHS or [the Executive Office for Immigration Review] until March 2009 when they filed their applications to adjust status." In making this argument, the Kukalos have combined the language of INA § 245(c)(2) and (k). Both provisions "are mutually referential provisions that operate in the context of adjustment of status under section 245(a) of the Act." *In re Serapio Felimon Alania-Martin*, 25 I. & N. Dec. 231, 233 (BIA 2010) (order sustaining appeal). But "[s]ection 245(k) does nothing more than create a limited exception from the general prohibition in section 245(c)(2) that bars an alien who engaged in unauthorized employment from adjusting status under section 245(a)." *Id.* We will separate our discussion of these two provisions.

Both parties cite an analogous published decision in which the BIA addressed whether a pending asylum application can be considered a failure to maintain lawful status for technical reasons under INA § 245(c)(2). *In re L-K-*, 23 I. & N. Dec. 677 (BIA 2004). The Kukalos contend that *L-K-* is an improper reading of the INA, but they cite no cases to support this contention. Although we review questions of law *de novo*, we must accord substantial deference to the BIA's interpretations of the INA. Thus, as the only case cited on the issue, we find *L-K-* particularly informative.

In *L-K-*, the respondent, also a citizen of the Ukraine, entered the United States as a nonimmigrant visitor. *Id.* at 678. Unlike the Kukalos, she filed an application for asylum with DHS before the expiration of her visa. *Id.* The application remained pending as her lawful status expired. *Id.* DHS referred the application to the immigration court. *Id.* After her application for asylum was denied and during the

pendency of her appeal, the respondent had been approved to receive a diversity visa, so she submitted an application for an adjustment of status. *Id.* An immigration judge granted adjustment, but the BIA reversed. *Id.* at 678–82. The BIA determined that it was undisputed that the respondent was not in lawful immigration status and, thus, reached the question of "whether her failure to maintain lawful status was for 'technical' reasons by virtue of the pendency of her asylum application that had been filed while she was in nonimmigrant status." *Id.* at 679 (citing INA § 245(c)(2), 8 U.S.C. § 1255(c)(2); 8 C.F.R. § 1245.1(d)(2)(ii)). The BIA held that "8 C.F.R. § 1245.1(d)(2)(ii) relates only to technical violations of status due to 'inaction of the [DHS].' . . . Thus, once the DHS has acted upon a pending asylum application, the 'technical' reasons for the violation cease to exist, and the applicant may no longer be considered to be out of status for technical reasons." *Id.* at 681. The BIA also discussed what would constitute "action" on the part of DHS, including when asylum officers approve, deny, refer, or dismiss the asylum application. *Id.* at 680 (citing 8 C.F.R. §§ 1208.14(b), (c); 8 C.F.R. § 1208.19).

In *L-K-*, the BIA specifically noted that its "holding is narrow and limited to the factual scenario at issue in this case," specifically "situations in which an asylum application was filed while the alien was in nonimmigrant status, the nonimmigrant status subsequently expired, and the asylum application was referred to the Immigration Court by the DHS prior to the time the alien applied for adjustment of status." *Id.* at 682. The only fact distinguishing the Kukalos' case from this narrow holding—that the Kukalos allowed their nonimmigrant status to expire before filing their asylum application—is ultimately inconsequential. What is material is that DHS took an action when it referred the Kukalos case to the Immigration Court in 2004. As the BIA held in *L-K-*, this action by DHS precludes the Kukalos' claim that their failure to maintain lawful status was "for technical reasons." Moreover, simply looking to the language of subsection (c)(2), because the Kukalos allowed their visas to expire (before filing their applications for asylum), they should not be eligible to adjust their status under subsection (a). We find that the BIA in this case did not abuse its discretion in finding that the Kukalos were unable to make a *prima facie* showing eligibility for adjustment

of status under INA § 245(a) because they were precluded by their failure to maintain status under § 245(c)(2).

We must address the Kukalos' claim under INA § 245(k) separately as *L-K-* explicitly limited its reach to aliens subject only to INA § 245(c) restrictions. Subsection (k) applies to aliens who are eligible to receive certain employment-based immigrant visas. It states that those aliens "may adjust status pursuant to subsection (a) . . . and notwithstanding subsection (c)(2) . . . if–(2) the alien, subsequent to such lawful admission has not, for an aggregate period exceeding 180 days–(A) failed to maintain, continuously, a lawful status." INA § 245(k)(2)(A), 8 U.S.C. § 1255(k)(2)(A). The Kukalos maintain that because they filed their applications for asylum within this 180-day limit, the time during which their asylum application was pending should not count against them because this pendancy constitutes a "technical reason" for their failure to maintain lawful status. Subsection (k) makes no mention of an exception for technical reasons. Indeed this language is only used in subsection (c) of INA § 245. Presumably, if this language was intended to apply to subsection (k) it would have been included in the provision. Even if we excise the time of "inaction" by DHS (as is allowed under subsection (c)), this would exclude only the time from which the Kukalos applied for asylum in October 1994 until DHS referred them to the Immigration Court in July 2004. That still leaves the short time between the expiration of their visas and their application for asylum as well as the lengthier time from the Notice to Appear in 2004 until the eventual application for adjustment in 2009. Thus, we find that the Kukalos have clearly missed the 180-day mark.

The Kukalos failed to establish that they maintained lawful status under either INA § 245(c)(2) or (k) as required for an application for adjustment under INA § 245(a). For that reason, we find that the BIA did not abuse its discretion in denying the Kukalos' motion to reopen as they were "unable to establish prima facie eligibility for adjustment of status."

IV.

For the foregoing reasons, we deny the petitions for review.