NOT RECOMMENDED FOR PUBLICATION
File Name:  19a0213n.06

No. 18-3841

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KARLA ROXANA GAVIDIA-ESCOBAR, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | Apr 25, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| WILLIAM P. BARR, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |

BEFORE:  DAUGHTREY, COOK, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Karla Roxana Gavidia-Escobar, a native and citizen of El Salvador, petitions this court for review of a Board of Immigration Appeals (BIA) order dismissing her appeal from the denial of her applications for asylum and withholding of removal under the Immigration and Nationality Act (INA) and protection under the Convention Against Torture (CAT).  In addition to the merits of these claims, she faults the Immigration Judge (IJ) for not granting her a continuance to have certain documents translated into English.  For the reasons that follow, we deny her petition.

I.

Along with her minor son, petitioner entered the United States without inspection in July 2015.  After being placed in removal proceedings, she conceded removability and applied for asylum, withholding of removal, and CAT protection, asserting past persecution and fear of future persecution if removed to El Salvador.  Prior to her hearing before an IJ, her counsel sought a

continuance to get corroborating documents translated into English for use at the hearing. The IJ found petitioner's request "reasonable," but denied the motion. He reasoned there was no need to continue the hearing because he was just going to "accept [petitioner]'s version of events as true," and thus there was no prejudice to petitioner.

With this procedural issue resolved, the hearing turned to petitioner's testimony in support of her claims. She focused solely on deplorable conduct by the MS-13 gang as a basis for her reason for leaving El Salvador for the United States. Beginning in 2006, gang members tried to get petitioner's brother, a member of the Armed Forces of El Salvador, to steal weapons for them. He refused, leading to threats to "take away his family." Those threats materialized in 2009, when gang members killed the father of petitioner's son (as witnessed by petitioner's brother). Police arrested a gang member for the murder, and petitioner's brother testified against the gang member. However, petitioner's brother stopped cooperating after receiving additional threats from the gang, and the gang member was released.

Petitioner's brother continued to rebuff the gang members' requests for him to steal weapons, so gang members killed their mother in 2011. A gang member responsible for her mother's murder was arrested, tried, convicted, and sentenced to fifteen years in prison. Gang members then demanded petitioner's brother leave the military because he was the only military member in their neighborhood, which he did in 2012. He eventually immigrated to Guatemala, and then the United States.

With petitioner's brother out of the country, gang members turned their threats to petitioner's son, Carlos. They wanted to make sure that he did not join the military. And they wanted him to join the gang. So they beat up Carlos, and gave petitioner an ultimatum: give

Carlos to the gang within a week, or he will be killed. Petitioner and her son chose to flee to the United States instead.

Following the hearing, the IJ found petitioner to be credible, but ineligible for relief. As relevant here, the IJ found petitioner had not "experienced harm"—either past harm or fear of future harm—"which would rise to the level of persecution." And the IJ concluded petitioner did not show "that the government of El Salvador is unable or unwilling to control the MS-13 gang" or that "the government of El Salvador would acquiesce in [petitioner]'s torture, or would be willfully blind to the actions of the MS-13 gang members." Accordingly, the IJ found petitioner ineligible for asylum and withholding of removal, and for CAT protection.

The BIA upheld the IJ's decision. It "agree[d] with the Immigration Judge that [petitioner's] mistreatment, considered cumulatively, is insufficient to rise to the level of past persecution." It also agreed that petitioner had not established a well-founded fear of future persecution, noting the "gang's motivation was to increase its ranks" and that there was "no evidence that gang members have an inclination to harm the respondent to punish her for being a member of her son's family." Therefore, the BIA concluded petitioner was ineligible for asylum and withholding of removal. The Board also agreed petitioner did not meet her burden of proof to establish CAT protection. This timely petition for review followed.

## II.

"When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). We "directly review[] the decision of the IJ while considering the additional comment made by the BIA." *Id.* (internal quotation marks and citation omitted). We review issues of law de novo and evaluate the factual findings of the IJ and the BIA using the substantial-

evidence standard. *Id.* Under this highly deferential standard, "[t]hese findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citation and internal quotation marks omitted).

III.

Under the INA, the Attorney General has discretion to grant asylum to applicants who meet the definition of a "refugee." 8 U.S.C. § 1158(b). "Ordinarily, there are two ways in which an applicant may qualify as a refugee: either by demonstrating that she has a well-founded fear of future persecution on account of a protected characteristic or by demonstrating that she has suffered past persecution—which gives rise to a rebuttable presumption that she has a well-founded fear of future persecution." *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015) (internal quotation marks omitted).

Petitioner asserts the physical and emotional harm MS-13 subjected her to, due to her familial status, rises to the level of past-persecution and qualifies as a well-founded fear of future persecution. There's no doubt the gang subjected her to significant harm—gang members killed both the father of her child and her mother, and threatened her brother, her son, and her. Although we are sympathetic to petitioner's plight, we discern no error mandating relief under the INA.

Petitioner's claim for relief focuses solely on the conduct of the MS-13 gang. "When an asylum claim focuses on non-governmental conduct, its fate depends on some showing either that the alleged persecutors are aligned with the government or that the government is unwilling or unable to control them." *Khalili*, 557 F.3d at 436 (citation omitted). Here, the record demonstrates—and petitioner does not contest—that although "the conditions of crime and violence in El Salvador are indeed dire, . . . , the government of El Salvador is making its best efforts to fight these criminal actors in that country." And specific to petitioner's claim, the

government has taken some steps to control the MS-13 gang members responsible for inflicting harm on petitioner and her family—it arrested, jailed, and tried the member who murdered her mother, and arrested, jailed, and attempted to try the member who murdered the father of her son. We therefore cannot conclude, on the basis of this record, that a reasonable adjudicator would be compelled to find that petitioner was harmed by persons that the El Salvadoran government was either unwilling or unable to control. Her claim for asylum therefore fails. *Cf. Galdamez v. Lynch*, 630 F. App'x 608, 610 (6th Cir. 2015) ("Galdamez's claim for withholding of removal also failed because he had not demonstrated that the government in El Salvador was unwilling or unable to control the gangs and protect him from harm. The record, which reflects the government's efforts to control the gangs, does not compel a contrary conclusion." (citation omitted)).

IV.

The INA mandates withholding of removal if an alien establishes that her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). This is "a more stringent burden than what is required on a claim for asylum"; the alien must establish "that there is a clear probability that [s]he will be subject to persecution if forced to return to the country of removal." *Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010) (citations omitted). Because petitioner failed to establish her eligibility for asylum, she necessarily failed to satisfy this "more onerous burden." *Kukalo v. Holder*, 744 F.3d 395, 402 (6th Cir. 2011) (citation omitted).

V.

To prevail on her petition for withholding of removal under the CAT, petitioner must prove "it is more likely than not that . . . she would be tortured if removed" to El Salvador. *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 503 (6th Cir. 2007) (citation omitted). "Torture" is "the

intentional infliction of severe mental or physical pain upon an individual 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009) (quoting 8 C.F.R. § 208.18(a)(1)). Acts amounting to torture are "extreme"; they do not include "lesser forms of cruel, inhuman, or degrading treatment or punishment." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006) (quoting 8 C.F.R. § 1208.18(a)(2)).

In conclusory fashion, petitioner asserts "[t]here is enough evidence . . . that shows that El Salvador has not been able to control the strengthening of the MS-13 and with the corruption among the police and government authorities, there ha[ve] been many cases of acquiescence and willful blindness to the violence by the MS-13 and the [murder of the father of petitioner's son] is one example." But yet she does so without citation to the administrative record, and has thus abandoned any challenge to the determination below that "[t]here is clearly no proof that the government of El Salvador would acquiesce in [petitioner]'s torture, or would be willfully blind to the actions of the MS-13 gang members." *See, e.g.*, *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014).

VI.

Finally, petitioner claims the IJ stripped her of due process by failing to grant a continuance in order to obtain translated documents. When reviewing alleged due process violations in removal hearings, we must determine whether there was a defect in the proceedings that prejudiced the petitioner. *Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016). Absent a showing that a due process violation "led to a substantially different outcome from that which would have occurred in the absence of those violations," such a claim fails. *Id.* at 297 (citation omitted). Petitioner makes no such showing here—she does not explain why the documents she wanted translated would have

led "to a substantially different outcome," especially given that the IJ credited her version of the events (which the documents would have apparently corroborated).

## VII.

For these reasons, we deny the petition for review.