**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0533n.06

No. 19-3072

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 17, 2019

DEBORAH S. HUNT, Clerk

IDRISSA COMPAORE,                          )
                                           )
    Petitioner,                            )
                                           )
                                           )    ON PETITION FOR REVIEW
v.                                         )    FROM THE UNITED STATES
                                           )    BOARD OF IMMIGRATION
WILLIAM P. BARR, Attorney General,         )    APPEALS
                                           )
    Respondent.                            )

BEFORE: GUY, BUSH, and MURPHY, Circuit Judges.

PER CURIAM. Idrissa Compaore[1] petitions this court for review of an order of the Board

of Immigration Appeals (BIA) dismissing his appeal from the denial of his application for asylum,

withholding of removal, and protection under the Convention Against Torture (CAT).[2] As set

forth below, we **DENY** Compaore's petition for review.

Compaore, a native of Côte d'Ivoire and a citizen of Burkina Faso, entered the United

States with a B-2 tourist visa in December 2014. Compaore remained in the United States beyond

the period authorized by his visa and then filed an application for asylum, withholding of removal,

and protection under the CAT. In his written application and supporting documents, he asserted

that he had experienced persecution and torture in Burkina Faso, and feared persecution and torture

if he returned, on account of his own political activities and his family's political ties to the former

---

[1] We refer to Idrissa Compaore as "Compaore" and the former president of Burkina Faso, Blaise Compaore, as "President Compaore."

[2] *See* 8 U.S.C. § 1158(a) (asylum); 8 U.S.C. § 1231(b)(3) (withholding of removal); 8 C.F.R. § 1208, 16-18 (CAT protection).

president's regime. The Department of Homeland Security (DHS) referred Compaore's application to the immigration court and served him with a notice to appear in removal proceedings, charging him with removability as a nonimmigrant who remained in the United States for a time longer than permitted. *See* 8 U.S.C. § 1227(a)(1)(B). Compaore appeared before an immigration judge (IJ), where he conceded removability as charged and filed an amended application.

At the merits hearing, Compaore testified that he was an active member of the National Union for Democracy and Development (UNDD) and opposed the longtime president of Burkina Faso, Blaise Compaore, and his party, the Congress for Democracy and Progress (CDP). In June 2011, Compaore was arrested, beaten, and detained for three days after he spoke out about a corrupt mayor, who was part of the CDP. In December 2011, Compaore attended a national convention on political reform, during which he spoke against an article of the Burkina Fasoconstitution that allowed President Compaore to serve another term. A few days after the conference, individuals followed Compaore's motorcycle, and he had an accident. Compaore testified that he later learned that the people following him were trying to kill him.

Compaore testified that his father and uncle were also active members of the UNDD, but they left the party and joined the CDP in 2012. Compaore remained loyal to the UNDD. In 2013, individuals stopped Compaore and his younger brother on their way home, and Compaore was beaten with a chain and gagged with a scarf. The two brothers were taken away and detained for several days in a warehouse, where Compaore was tortured and interrogated about his father. The two brothers were released after a friend paid a $10,000 ransom. According to Compaore, he was detained because of his father's support for President Compaore and because of his own political engagement. After his release, Compaore went to Mali for three months before returning to Burkina Faso.

On October 31, 2014, President Compaore fell out of power and was exiled to Côte d'Ivoire. Compaore's father and uncle attempted to flee Burkina Faso, but were arrested and beaten. Compaore testified that his uncle was killed, but that his father escaped and now lives in France. After his family fled, Compaore testified, their home was ransacked and set on fire. Compaore, who went into hiding, obtained a visa and came to the United States in December 2014.

Compaore also testified that he continues to be involved in Burkinabe politics through social media and remains in contact with the president of the UNDD. If he returns to Burkina Faso, Compaore claimed, he could be arrested, detained, tortured, and killed by his political adversaries.

After the merits hearing, the IJ denied Compaore's application for asylum, withholding of removal, and CAT protection, and subsequently ordered his removal to Burkina Faso. The IJ found that Compaore, although credible, failed to adequately corroborate his claim with reasonably obtainable evidence, and therefore, failed to meet his burden of proof for asylum. The IJ went on to find that, even assuming past persecution, the DHS satisfied its burden to establish that Compaore no longer had a well-founded fear of persecution in Burkina Faso due to a change in country conditions, which included the resignation of President Compaore and the subsequent "free and fair" election of a new president. The IJ determined that, because Compaore failed to satisfy the lower burden of proof for asylum, he necessarily failed to satisfy the more stringent standard for withholding of removal. As for CAT protection, the IJ found that Compaore failed to establish that it is more likely than not that he will be subjected to harm rising to the level of torture if he returned to Burkina Faso, or that such harm would be instigated by or with the consent or acquiescence of the Burkinabe government.

The BIA dismissed Compaore's appeal of the IJ's decision. The BIA declined to address whether Compaore provided sufficient evidence to corroborate his past persecution claim. Instead,

the BIA found no clear error in the IJ's determination that, assuming past persecution, the DHS successfully rebutted the presumption of a well-founded fear of persecution based on a fundamental change in circumstances within Burkina Faso. Because Compaore failed to meet his burden of proof for asylum, the BIA determined that Compaore failed to meet the higher burden for withholding of removal. In addition, although acknowledging Compaore's mistreatment in Burkina Faso, the BIA concluded that he failed to demonstrate a clear probability that he would be tortured by or with the acquiescence of Burkinabe officials, "particularly in light of the change in political power."

Compaore's timely petition for review followed. "Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). We review the agency's factual findings for substantial evidence, *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006), reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).[3]

An alien seeking asylum must demonstrate that he "meets the definition of a 'refugee,' which means a person who is unable or unwilling to return to [his] home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). Compaore claimed that he experienced persecution and feared future persecution in Burkina Faso on account of his own

---

[3] Compaore argues that this court should decline to afford *Chevron* deference and withhold application of the *Chenery* doctrine in deciding this case. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *SEC v. Chenery Corp.*, 318 U.S. 80, 88-89 (1943). But neither *Chevron* deference nor the *Chenery* doctrine applies to Compaore's case. This case does neither involves the BIA's construction of an ambiguous statutory provision, *see Chevron*, 467 U.S. at 843, nor inadequate reasoning by the BIA, *see Chenery*, 332 U.S. at 196.

political opinion and the imputed political opinion of his family members.[4]  In support of his petition for review, Compaore contends that his credible testimony, along with his corroborating evidence, sustained his burden of proof to establish past persecution.  Compaore argues further that even if the IJ reasonably insisted on additional corroborating evidence,  the IJ should have afforded him a continuance to obtain corroborating evidence, and should have provided him an opportunity to show that he cannot reasonably obtain such evidence.  The BIA expressly declined to address whether Compaore provided sufficient evidence to corroborate his past persecution claim.  Because our review is limited to the issues decided by the BIA, *see INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam), Compaore's arguments about corroborating evidence are misplaced.

Instead of addressing the corroboration issue, the BIA assumed that Compaore established past persecution in Burkina Faso, triggering the presumption of a well-founded fear of future persecution.  *See* 8 C.F.R. § 1208.13(b)(1); *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). The government may rebut that presumption by establishing, "by a preponderance of the evidence, that conditions in the country have changed so fundamentally that the applicant no longer has a well-founded fear of future persecution."  *Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010); *see* 8 C.F.R. § 1208.13(b)(1)(i)(A).  "If the government rebuts the presumption, the applicant 'must demonstrate a well-founded fear of future persecution notwithstanding' the changed country conditions."  *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007) (quoting *Liti v. Gonzales*, 411 F.3d 631, 639 (6th Cir. 2005)).  "This 'well-founded fear' must be both subjectively genuine and objectively reasonable."  *Kukalo v. Holder*, 744 F.3d 395, 401 (6th Cir. 2011) (quoting *Mapouya*, 487 F.3d at 412).

---

[4] Compaore's brief in support of his petition for review suggests a familial connection with President Compaore, but he made no such claim before the agency.

Substantial evidence supported the BIA's determination that the government rebutted the presumption of future persecution based on a fundamental change in circumstances in Burkina Faso. On October 31, 2014, President Campaore was forced to resign and was exiled to Côte d'Ivoire. The 2017 Human Rights Report for Burkina Faso states: "In 2015 the country held peaceful and orderly presidential and legislative elections, marking a major milestone in the country's transition to democracy." (A.R. 515) (citation omitted). A new president from the People's Movement for Progress was elected during these elections, which were characterized as "free and fair" by national and international observers. According to the Human Rights Report, "[t]here were no reports of political prisoners or detainees during the year, although some arrests and detentions may have been politically motivated." (A.R. 522) (citation omitted). Additionally, the Human Rights Report states that although the interim president and president of the CDP, and the president of the UNDD, were arrested for being involved in or refusing to condemn an attempted coup in 2015, all three men were released in 2016. (A.R. 522) This was the Human Rights Report's only reference to members of the CDP or UNDD being arrested. Compaore asserts that the agency "over-relied" on the Human Rights Report. While we have recognized that these reports can contain flaws, we have also noted that they "are generally the best source of information on conditions in foreign nations." *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (quoting *Kokaj v. Ashcroft*, 100 F. App'x 506, 508 (6th Cir. 2004)). Compaore fails to identify any record evidence compelling the conclusion that the political conditions in Burkina Faso have not improved.

Citing *Ren v. Holder*, 648 F.3d 1079 (9th Cir. 2011), Compaore also argues that if he were required to submit additional corroborating evidence to support his fear of future prosecution, he should have been given notice of that requirement and a reasonable opportunity to submit such evidence. But we have rejected that argument, holding that federal law does not entitle those in

immigration proceedings to notice of the type of evidence that they must submit to meet their burden of proof. *Gaye v. Lynch*, 788 F.3d 519, 530 (6th Cir. 2015).

Substantial evidence also supported the BIA's determination that Compaore failed to establish that his fear of future persecution was objectively reasonable in light of the current conditions in Burkina Faso. Compaore identified several political enemies—all former members of President Compaore's regime who now serve in the current government—who he believes would try to harm him because of his political convictions if he returned to Burkina Faso. But Compaore failed to offer any specific threats of harm to support this belief. *See Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004) (upholding the denial of asylum based on changed country conditions where the petitioner "presented no credible evidence that he will be singled out for different treatment if" removed and therefore failed to show a well-founded fear of future persecution). The BIA also noted that Compaore's mother and younger brother continue to live in Burkina Faso without harm. *See Gumbol v. INS*, 815 F.2d 406, 413 (6th Cir. 1987) (noting that the continued, unharmed residency of family members weighed against a well-founded fear of future persecution). Finally, the BIA concluded that there was insufficient evidence that the current government in Burkina Faso has any interest in persecuting Compaore either because of his opposition to President Compaore or because of his family's support for the CDP. The record does not compel a contrary conclusion.

Ultimately, by failing to establish his eligibility for asylum, Compaore necessarily failed to satisfy the more stringent standard for withholding of removal. *See Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009). Compaore relied on the same grounds in support of his claim for CAT protection as his claims for asylum and withholding of removal. Because Compaore failed to establish that it is more likely than not that he would be subject to persecution if removed to Burkina Faso, he likewise failed to establish that it is more likely than not that he would be tortured.

*See Berri v. Gonzales*, 468 F.3d 390, 397-98 (6th Cir. 2006); *see also Rodriguez v. Gonzales*, 441 F.3d 593, 595 (8th Cir. 2006) ("A separate analysis under CAT is only required when the petitioner has presented evidence that he is likely to be tortured for reasons unrelated to his asylum claim.").

For these reasons, we **DENY** Compaore's petition for review.