NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0332n.06

No. 20-4035

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 13, 2021
DEBORAH S. HUNT, Clerk

FELIPE GREGORIO-ORDONEZ,　　　　　　　　)

　　　　　Petitioner,　　　　　　　　　　　　)

　　　　　　　　　　　　　　　　　　　　　)

　　　　　v.　　　　　　　　　　　　　　　)

　　　　　　　　　　　　　　　　　　　　　)

MERRICK B. GARLAND, Attorney General,　　)

　　　　　　　　　　　　　　　　　　　　　)

　　　　　Respondent.　　　　　　　　　　　)

　　　　　　　　　　　　　　　　　　　　　)

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

BEFORE: GUY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Felipe Gregorio-Ordonez, a native and citizen of Guatemala, petitions for review of a Board of Immigration Appeals order denying his application for asylum, withholding of removal, and withholding of removal under the Convention Against Torture. We deny his petition.

I.

Petitioner entered the United States without inspection in December 2015. (A.R. 319.) He was placed in removal proceedings when the Department of Homeland Security filed a Notice to Appear with the Immigration Court, charging him with removability for being present in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i). (A.R. 319.) Gregorio-Ordonez conceded his removability, (A.R. 123–24, 177), but soon after filed an application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). (A.R. 163–74, 178–300.)

The Immigration Judge (IJ) held a hearing on Gregorio-Ordonez's application. (A.R. 128–154.) There, petitioner testified that in 2013, gang members armed with guns and knives broke into his house in Huehuetenango, Guatemala, and attempted to recruit him into their gang. (A.R. 138.) Petitioner's grandfather, armed only with a wooden stick, chased them off. (A.R. 138.) He did not report the incident to police. (A.R. 140.)

This 2013 incident was the only time Gregorio-Ordonez was threatened (or harmed) in Guatemala, although he remained in the country until 2015. (A.R. 137.) He had never seen the gang members previously and did not see them again. (A.R. 138, 140, 147.) However, he testified that he had knowledge of other problems caused by gangs in Guatemala, including a friend who had been killed by a gang, and a neighbor who had been harmed for refusing to join a gang. (A.R. 141–43.) Because of the incident he experienced and his knowledge of harm to others, petitioner testified that he feared returning because the gangs of Guatemala would "want to recruit [him]." (A.R. 144–45.) If he refused to join, petitioner feared that they would harm or kill him. (A.R. 145.) Further, his counsel theorized that the harm he had encountered was based on his social group of "Mayan Chuj males between the ages of 15 and 25 who lack adequate governmental protection." (A.R. 134–35; *see also* A.R. 161.)

The IJ denied petitioner's application and ordered him removed to Guatemala. (A.R. 82–88.) She concluded that Gregorio-Ordonez had not established past persecution through the single incident discussed above because the perpetrators "made no specific threats against him and left and never came back." (A.R. 87.) The IJ further noted that petitioner experienced no other gang-related issues in the two years between the incident and his entry to the United States. (A.R. 87.)

The IJ also rejected petitioner's proposed social group because she concluded that even if the group had some immutable characteristics, it was not perceived as socially distinct in

Guatemala. (A.R. 87.) Further, the IJ concluded that Gregorio-Ordonez had not established that the government participated in causing harm to him or had acquiesced to the harm by third parties. (A. R. 88.) Accordingly, petitioner was not entitled to asylum, which necessarily meant he could not meet the higher burden for withholding of removal. (A.R. 88.)

Regarding his CAT claim, the IJ observed that petitioner "makes no claim that he is afraid of or that anything happened to him on account of a government agent. He also fails . . . to establish that the government would know of any harm or torture that might befall him . . . and then turn a willful blind eye in acquiesce to the harm." (A.R. 88.) The court thus denied petitioner's application for relief under the CAT. (A.R. 88.)

Petitioner appealed to the Board of Immigration Appeals (BIA). The Board, however, agreed with the IJ that petitioner had not established his eligibility for asylum or withholding of removal. (A.R. 3–4.) Specifically, it concluded that Gregorio-Ordonez had not demonstrated that: (1) "he experienced harm that rose to the level of persecution"; or (2) "his membership in a particular social group . . . was 'at least one central reason' for his past or future fear of persecution." (A.R. 4.) As to his CAT claim, the BIA found no clear error in the IJ's factual findings underlying the conclusion that petitioner had not demonstrated that it was more likely than not that he would suffer torture at the hands of the government or with its consent or acquiescence. (A.R. 5.) It thus affirmed the IJ's denial of petitioner's request for protection under the CAT. (A.R. 5.) Finally, the BIA rejected petitioner's claim that he had not received a full and fair hearing before the IJ in violation of his right to due process. It concluded that from the record that "the Immigration Judge fully considered the evidence set forth in support of [his] claim." (A.R. 5.) Based on the foregoing, the BIA dismissed Gregorio-Ordonez's appeal, and he timely petitioned our court for review of the Board's decision.

II.

"When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). We "directly review[ ] the decision of the IJ while considering the additional comment made by the BIA." *Id.* (internal quotation marks and citation omitted). We review issues of law de novo and evaluate the factual findings of the IJ and the BIA using the substantial-evidence standard. *Id.* Through this highly deferential lens, "[t]hese findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (internal quotation marks omitted).

III.

The Immigration and Nationality Act empowers the Attorney General to grant asylum to applicants who meet the Act's definition of "refugee." *See* 8 U.S.C. §§ 1101(a)(42), 1158(b). "Ordinarily, there are two ways in which an applicant may qualify as a refugee: either by demonstrating that she has a well-founded fear of future persecution on account of a protected characteristic or by demonstrating that she has suffered past persecution—which gives rise to a rebuttable presumption that she has a well-founded fear of future persecution." *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015) (internal quotation marks omitted). Petitioner argues that the BIA erred by affirming the IJ's rulings as to both past persecution and future persecution. (Petitioner's Br. at 12–14.) We conclude that substantial evidence supports both determinations and reject his arguments to the contrary.

Taking first petitioner's claim that he suffered past persecution when gang members broke into his home and threatened him with knives and guns, the record does not compel such a finding. Persecution "requires more than a few isolated incidents of verbal harassment or intimidation,

unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). "A single incident may be sufficient to constitute persecution, but it must be correspondingly severe." *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007). The single incident petitioner has alleged, while alarming, falls short of establishing persecution because as the IJ noted, petitioner was not harmed, he was able to remain in Huehuetenango for approximately two more years, and he never again saw the gang members who threatened him. *See Kukalo v. Holder*, 744 F.3d 395, 400 (6th Cir. 2011) ("Establishing that harassment rose to the level of 'persecution' is not an easy task[,] . . . [and] demonstrating that the evidence *compels* this court to find that persecution occurred is even more difficult.").

Substantial evidence also supports the agency's determination that Gregorio-Ordonez has not demonstrated a well-founded fear of future persecution, caused at least in part because of his membership in a particular social group. The INA does not define "particular social group," but the Board and this court have articulated its requirements. Under 8 U.S.C. § 1158, a "member of a particular social group" will have membership in a group with immutability, particularity, and social distinction within the society in question. *Betancourt-Aplicano v. Sessions*, 747 F. App'x 279, 282 (6th Cir. 2018). To qualify as a member of an immutable group, the applicant will have membership in a "group [that] either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Umana-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013) (citation omitted). Particularity refers to "whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009) (citation omitted). And social distinction requires the "set of individuals with

the shared characteristic be perceived as a group by society." *Umana-Ramos*, 724 F.3d at 671 (internal quotation marks omitted).

Petitioner claims that he was targeted for gang recruitment in part because of his particular social group as a "Mayan Chuj male between the age[] of 15 and 25 who lack[s] government protection." (Petitioner's Br. at 13–15.) But the agency determined that this particular social group lacked social distinction. "To have the 'social distinction' necessary to establish a particular social group, there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *Gil-Cerqueda v. Rosen*, 841 F. App'x 815, 820 (6th Cir. 2021) (citation omitted). Nothing in the record shows Guatemalans as viewing this purported group as "socially distinct within their society." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 499 (6th Cir. 2015); *see also Umana Ramos*, 724 F.3d at 671. But even assuming the proposed group could qualify, substantial evidence also supports the BIA's determination that Gregorio-Ordonez did not establish a nexus between the alleged persecution and his proposed group. *See Ajqui Gomez v. Barr*, 828 F. App'x 272, 276–77 (6th Cir. 2020) (rejecting nexus argument for particular social group of "young Guatemalan males who refuse gang recruitment"). Accordingly, we affirm the agency's determination that Gregorio-Ordonez is not eligible for asylum or withholding of removal.

IV.

To prevail on his petition for withholding of removal under the CAT, Gregorio-Ordonez must prove "it is more likely than not that he . . . would be tortured if removed" to Guatemala. *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 503 (6th Cir. 2007) (citation omitted). "Torture" is "the intentional infliction of severe mental or physical pain upon an individual 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an

official capacity.'" *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009) (quoting 8 C.F.R. § 208.18(a)(1)). Acts amounting to torture are "extreme"; they do not include "lesser forms of cruel, inhuman, or degrading treatment or punishment." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006) (quoting 8 C.F.R. § 1208.18(a)(2)), *abrogated on other grounds by Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020).

Substantial evidence supports the Board's determination that petitioner failed to establish that it was more likely than not that he would be subject to torture if removed to Guatemala. Petitioner has identified only generalized and speculative fears of torture, which is not sufficient for relief under the Act. *See, e.g.*, *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155–56 (6th Cir. 2010). In short, Gregorio-Ordonez has not convinced us that evidence in the record compels the conclusion that it is more likely than not that he would be tortured if he is removed to Guatemala.

V.

Finally, petitioner argues that he did not receive a full and fair hearing before the IJ in violation of his right to due process. (Petitioner's Br. at 20–21.) He contends that the IJ "did not take into account" evidence he supplied regarding country conditions in Guatemala. The BIA rejected this argument, reasoning that the record demonstrated the IJ "fully considered the evidence set forth in support of [petitioner's] claim." (A.R. at 5.)

We uphold the Board's determination on de novo review. *See Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016). "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Id.* (citation omitted). However, "the immigration judge retains broad discretion in conducting that hearing." *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009) (internal quotation marks omitted). When reviewing alleged due process violations in removal hearings, we must determine whether there was a defect in the

proceedings that prejudiced the petitioner. *Zheng*, 819 F.3d at 296. Absent a showing that a due process violation "led to a substantially different outcome from that which would have occurred in the absence of those violations," such a claim fails. *Id.* at 297 (citation omitted). Gregorio-Ordonez has only argued in a conclusory fashion that the alleged due process violation "prevented [him] from relief that he would have been granted pursuant to federal law." (Petitioner's Br. at 21.) Because petitioner has not explained why the outcome of his immigration proceedings would have been different absent the alleged violation, we deem the issue forfeited. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).

VI.

We deny the petition for review.