Dennis L. COLWELL, Petitioner–
Appellant,

v.

William TANNER, Warden,
Respondent–Appellee.

No. 01–4032.

United States Court of Appeals,
Sixth Circuit.

Oct. 9, 2003.

Before DAUGHTREY, MOORE, and
SUTTON, Circuit Judges.

OPINION

MOORE, Circuit Judge.

Petitioner–Appellant Dennis L. Colwell
("Colwell") filed a petition for a writ of
habeas corpus in the United States Dis-
trict Court for the Southern District of
Ohio on December 28, 2000, after the expi-
ration of the one-year statute of limitations
period mandated by the Antiterrorism and
Effective Death Penalty Act of 1996
("AEDPA"). 28 U.S.C. § 2244(d). The
district court accordingly dismissed the pe-
tition as untimely. Colwell appeals and
claims that the district court should have
tolled the one-year limitations period on
equitable and/or statutory grounds be-
cause Colwell's prior attorney incorrectly
informed Colwell that the limitations peri-

od had already run, and because Colwell's limited eyesight prevented him from discovering the attorney's mistake and filing a petition in a timely fashion. Because neither equitable tolling nor statutory tolling are appropriate here and because Colwell's petition would still be untimely even if they were, we AFFIRM the district court's dismissal of the petition for a writ of habeas corpus.

## I.

Colwell pleaded guilty on December 1, 1995, to two counts of rape, two counts of gross sexual imposition, and one count of attempted rape, and was sentenced to fifteen to twenty-five years of imprisonment by the Court of Common Pleas of Licking County, Ohio. Following the imposition of the sentence, Colwell filed a motion on April 4, 1996, in the same trial court to withdraw his guilty plea and to receive a new trial. The trial court denied his motion via judgment entry dated April 18, 1996. He appealed on May 14, 1996, to the Fifth District Court of Appeals, which affirmed the trial court on December 9, 1996. *State v. Colwell,* No. 96–CA–65, 1996 WL 753167 (Ohio App. 5th Dist. Dec. 9, 1996). Colwell did not further appeal this decision to the Ohio Supreme Court.

On June 28, 1996, Colwell filed a collateral petition for post-conviction relief on the grounds of ineffective assistance of trial counsel in the Court of Common Pleas of Licking County. On August 13, 1996, the trial court denied this petition. On September 6, 1996, Colwell appealed to the Fifth District Court of Appeals, which affirmed the decision of the trial court on March 27, 1997. *State v. Colwell,* No. 96–CA–114, 1997 WL 219120 (Ohio App. 5th Dist. Mar. 27, 1997). On May 12, 1997, Colwell appealed to the Ohio Supreme Court, which declined jurisdiction over the appeal on July 31, 1997. *State v. Colwell,*

79 Ohio St.3d 1460, 681 N.E.2d 442 (1997). Thus, Colwell's direct and collateral appeals terminated on July 31, 1997.

In late 1997 or early 1998, Colwell contacted the law firm of Kura & Wilford to inquire into methods of securing his release from prison. On April 24, 1998, attorney Wilford sent Colwell a letter and a report, which concluded that even though "[a]ll of your issues ... would, in years past, have presented ripe fruit for a federal *habeas corpus* filing[,] ... because of the one-year time limitation ... it is too late to litigate this issue in federal court." Joint Appendix ("J.A.") at 65 (Wilford Letter). This guidance turned out to be incorrect; in April 1998, Colwell had more than three months left to petition the federal district court for a writ of habeas corpus.

Of particular additional relevance is Colwell's severe eyesight problem. The Ohio Department of Rehabilitation and Corrections considers Colwell to be legally blind, and although Colwell does not completely lack the ability to see, he has extreme difficulty reading and his deteriorating eyesight causes him pain. Colwell alleges that his eyesight prevented him from reading books, statutes, or forms that would have allowed him to double-check Wilford's work and uncover the error. He also claims that the prison library did not have any Braille or other services to assist the blind in conducting legal research. However, Colwell did rely on outside assistance for reading in the past, as Colwell's mother read him Wilford's letter when it arrived.

Colwell hired present counsel at some point in the summer of 1999. Colwell contends that his present counsel did not discover the letter from Wilford until January 2000, which delayed the filing of his habeas petition until December 29, 2000, nearly three-and-a-half years after the conclusion of his collateral state appeal. The district court rejected Colwell's petition as untime-

ly and did not believe that equitable tolling applied. Colwell filed a notice of appeal, which the district court "construe[d] as a request for a certificate of appealability." J.A. at 20 (Dist. Ct. Op. & Order). The district court granted a certificate of appealability ("COA"), because it concluded that "jurists of reason would find it debatable whether the Court was correct in its ruling that equitable tolling should not apply and that the petition was barred by the statute of limitations." J.A. at 25(COA) (citing *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). The district court had proper jurisdiction under 28 U.S.C. § 2254(a), and we have jurisdiction to hear an appeal on the issue raised by the COA under 28 U.S.C. § 2253(c).

## II.

Generally, we review de novo a district court's decision to deny a writ of habeas corpus. *Northrop v. Trippett,* 265 F.3d 372, 376 (6th Cir.2001). A district court's factual findings are not disturbed unless they are clearly erroneous. *Sawyer v. Hofbauer,* 299 F.3d 605, 608 (6th Cir.2002). We review de novo a district court's decision not to apply the doctrine of equitable tolling when the facts are undisputed or when equitable tolling is unavailable as a matter of law. *Dunlap v. United States,* 250 F.3d 1001, 1007, 1008 & n. 2 (6th Cir.2001). Because the relevant facts are undisputed here, de novo review is the proper standard.

Congress placed a one-year statute of limitations on habeas petitions brought by state prisoners under AEDPA. 28 U.S.C. § 2244(d)(1) ("A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."). The statute of limitations commences in this case on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The statute of limitations can be equitably or statutorily tolled, *Griffin v. Rogers,* 308 F.3d 647, 651 (6th Cir.2002), but tolling does not expand the limitations period beyond its statutorily mandated boundaries; it merely stops the clock from running during the tolling period.

The parties dispute the date when the limitations period started, and consequently also the date when the limitations period ran. Colwell's appeal from the denial of his motion to withdraw the guilty plea is part of his underlying criminal case, and under 28 U.S.C. § 2244(d)(1)(A), the limitations period does not begin to run until the direct review period ends.[1] Because the Ohio court of appeals did not reject Colwell's direct appeal of this motion until December 9, 1996, the one-year limitations period did not commence until that date. The clock then would have started, but Colwell had already filed a post-conviction motion on June 28, 1996, which tolled the statute of limitations the moment it started to run. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review ... is pending shall not be counted toward any period of limitation...."). Additionally, the days in between the appellate court's affirmance of

---

1. The Ohio Supreme Court has held that a postsentence motion to withdraw a guilty plea filed in the trial court, which is governed by Ohio Criminal Rule 32.1, "is not collateral but is filed in the underlying criminal case," and accordingly "it is not a 'collateral challenge to the validity of a *conviction or sentence.*'" *State v. Bush,* 96 Ohio St.3d 235, 773 N.E.2d 522, 526 (Ohio 2002) (quotation omitted). The appeal of the denial of such a motion is thus part of the direct review process.

the trial court's denial of the post-conviction motion and the subsequent appeal to the Ohio Supreme Court are tolled, such that the clock would not run during the preparation periods between appeals. *See Carey v. Saffold,* 536 U.S. 214, 219–20, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). Upon the Ohio Supreme Court's decision to decline jurisdiction over Colwell's appeal on July 31, 1997, the statute of limitations again began to run. It expired on July 31, 1998.[2] Colwell did not file his petition until more than two years later, on December 29, 2000. Thus, unless some other form of tolling occurred, Colwell's habeas petition was untimely.

■ Colwell alleges that two different types of tolling apply – equitable tolling and statutory tolling. We conclude, however, that even if we were to toll the statute of limitations under either type of tolling, Colwell still filed his petition in an untimely fashion. Colwell argues that the ineffective assistance of his previous attorney, whose misinformation deceived Colwell about the remaining time in which he could file a habeas petition, justifies equitable tolling of the limitations period, but even if Colwell's reliance upon his previous attorney's letter could suspend the running of the habeas filing clock, his petition was still untimely. If we equitably tolled the limitations period because Wilford's letter misled Colwell into believing that he had no opportunity to file a habeas petition, the clock would stop on April 24, 1998, when Colwell received the letter. At that point, 266 days would have lapsed on the limitations period, which began running on July

31, 1997, leaving Colwell with ninety-nine days to file his habeas petition. However, once Colwell hired a new attorney in the summer of 1999, the conditions that served to justify equitably tolling the statute of limitations would have no longer existed, and the clock would have begun again to run. Even giving Colwell the benefit of the doubt and assuming that he hired his new counsel on the last day of summer, September 20, 1999, the one-year statute of limitations would have expired on December 28, 1999. And, even if we accept Colwell's claim that his new attorney did not "discover" the letter until January 2000, Colwell still filed his habeas petition in an untimely fashion. If his new attorney discovered the letter on the last day of January 2000, Colwell needed to file his petition no later May 9, 2000. Yet, Colwell did not file his habeas petition until December 29, 2000, 234 days after May 9, the latest possible date on which the limitations period could have run.

At oral argument, Colwell's attorney contended that the limitations period should have been equitably tolled after the "discovery" of the letter while the attorney was preparing the habeas petition. As a ground for this additional equitable tolling, Colwell's attorney asserted that the late filing of the petition was a consequence of his desire to conduct as thorough as possible an investigation of Colwell's trial record. We do not find any support in the caselaw for the notion that a limitations period can be tolled under such circumstances. The court in *Jurado v. Burt,* 337 F.3d 638 (6th Cir.2003), was

---

2. Colwell, however, counters that the limitations period was again tolled during the ninety days he had to file a petition for a writ of certiorari with the U.S. Supreme Court. Under *Isham v. Randle,* 226 F.3d 691, 695 (6th Cir.2000), the ninety-day period in which Colwell could have petitioned the U.S. Supreme Court does not further toll the running of the

limitations period. Currently, *Abela v. Martin,* No. 00–2430, is pending before the en banc court. In *Abela,* we are considering this very issue of whether the ninety-day period for filing a petition for certiorari should toll the limitations period. No matter the outcome in *Abela,* however, Colwell's habeas petition would still be untimely.

faced with a similar situation in which counsel conceded that she was aware of the one-year limitations period but "'chose not to rush'" the filing of the habeas petition so as to scour the record more thoroughly for constitutional violations. *Id.* at 644. We ruled that "it was [not] reasonable to believe that a motion that was merely being investigated and drafted was 'properly filed'" such that tolling was justified. *Id.* at 645. Similarly, Colwell's habeas counsel conceded that he was aware of the limitations period, but chose the path of filing the petition late in order to develop further the legal theories he offered to the court. Such a choice was unwise. The time that counsel spends preparing a habeas petition is simply not grounds for tolling the statutorily mandated one-year limitations period; to rule otherwise would invite protracted investigations that would eviscerate the plain meaning of 28 U.S.C. § 2244(d).

■ Colwell's statutory tolling claim, premised on the argument that his blindness prevented him from using a prison library that lacked materials for the visually impaired, also must fail. AEDPA states that the one-year limitations period does not run when there exists an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States" and the petitioner actually "was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Not only must the state impede the petitioner in some fashion, but also that obstruction must cause the untimely filing of the petition. *See Winkfield v. Bagley,* No. 02–3193, 2003 WL 21259699, at *4 (6th Cir. May 28, 2003) (unpublished). Colwell's chief proposition is that, had there been resources for the blind in the library, Colwell could have learned of Wilford's poor advice. Even if the lack of resources for the visually impaired could

constitute an impediment, Colwell has not demonstrated that it caused him to file his petition late. The alleged impediment would no longer exist once Colwell hired new counsel who could inform him of AEDPA's limitations period; the habeas clock would again tick away, reaching zero long before Colwell's new attorney filed the petition.

## III.

Because neither equitable tolling nor statutory tolling are appropriate here and because Colwell's petition would still be untimely even if they were, we AFFIRM the district court's dismissal of the petition for a writ of habeas corpus.