NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0520n.06

Case No. 23-3086

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 13, 2023
KELLY L. STEPHENS, Clerk

DANIELA A. AGUILUZ ORTIZ,

  Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

  Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW OF
AN ORDER OF THE BOARD OF
IMMIGRATION APPEALS

OPINION

Before: WHITE, NALBANDIAN, and MURPHY Circuit Judges.

**NALBANDIAN, Circuit Judge.** Daniela Aguiluz Ortiz challenges a Board of Immigration Appeals' (BIA) decision denying her motion to reopen and rescind an *in absentia* removal order. Because Aguiluz's motion fails to meet statutory requirements, we deny Aguiluz's petition for review.

**I.**

Aguiluz is a native and citizen of El Salvador. In 2016, Aguiluz, then a 16-year-old, entered the country alongside her mother—both without valid entry documents. Upon entering, Aguiluz and her mother applied for admission at the Paso Del Norte, Texas Port of Entry. An interviewer found that Aguiluz had a credible fear of persecution if returned to El Salvador. So Aguiluz and her mother were released and moved to live with extended family in Tennessee.

On July 12, 2017, the Department of Homeland Security served Aguiluz with a Notice to Appear in immigration court, explaining that she was removable as an immigrant who lacked a

valid entry document when applying for admission. On September 26, 2017, Aguiluz was then mailed a notice of hearing, requiring her to appear at the Immigration Court in Memphis, Tennessee, on January 10, 2018. Aguiluz failed to show up to the hearing, so the Immigration Judge (IJ) ordered her removed to El Salvador *in absentia*, deeming her failure to appear an abandonment of all pending applications for relief from removal.

Aguiluz claims that she missed her hearing only because she mistakenly assumed it would be held the same day as her mother's. Aguiluz and her mother were sent two separate notices of hearing at the same time. By her account, Aguiluz reviewed both notices since her mother is illiterate. Aguiluz correctly "deciphered the date of her mother's hearing" (January 23, 2018), but failed to notice that her hearing was nearly two weeks before (January 10, 2018). Pet. Mot.[1] Aguiluz apparently assumed that her hearing would be on the same day as her mother's. After all, Aguiluz was a minor and entered the country alongside her mother. But at her mother's hearing on January 23, Aguiluz learned of her mistake. Having missed her hearing, Aguiluz now had an order of removal.

## A.

On September 16, 2019—20 months after missing her initial hearing—Aguiluz moved to reopen her case with the IJ, seeking to rescind her *in absentia* removal order. Aguiluz argued that reopening her case was authorized by a statutory provision allowing a motion to reopen an alien's file within 180 days of the removal order, when a court hearing was missed because of "exceptional circumstances." Pet. Mot., citing 8 U.S.C. § 1229a(3)(1).[2] Aguiluz argued that her situation fell

---

[1] Aguiluz's motion to reopen is unpaginated.

[2] Aguiluz also relied on a separate statutory provision allowing for reopening (without a time limit) when the alien can show a lack of notice of the hearing. *See* 8 U.S.C. § 1229a(b)(5)(c)(ii). The IJ

within the statutory definition of "exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness, or serious illness or death of the spouse, child or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). Aguiluz pointed to her mental health (including diagnoses of post-traumatic stress disorder and anxiety), her age, and "the unusual fact that she as a minor was given a different court date from her mother." Pet. Mot.

Aguiluz conceded that her motion was filed well after the 180-day deadline. But she argued that unfortunate events delaying the motion's filing justified equitable tolling. Aguiluz claimed she was not aware that she had the right to move to reopen until February 2019—more than a year after she missed her hearing.[3] Aguiluz attributed her initial ignorance to being a minor. And Aguiluz's mother, despite hiring an attorney for her own case, "did not pursue her then-minor daughter's case" because "she believed that [Aguiluz's] cause could not be fixed." Pet. Mot. In Aguiluz's account, this mistake was corrected only when her mother's counsel belatedly "realized the circumstances and explained the eligibility and need for a motion to reopen in February 2019." Pet. Mot. Aguiluz claims she "acted proactively since February 2019 upon discovering the right to file a motion to reopen." Pet. Mot.

On why it took another seven months from February 2019 to file the motion, she blames her former counsel. The law firm representing Aguiluz changed offices in May 2019 "on very

---

rejected this argument, concluding that "lack of notice is not at issue" because Aguiluz admitted receiving the notice of hearing. IJ Order at 2. Aguiluz made this argument on appeal at the Board of Immigration Appeals, where it was rebuffed once more. But Aguiluz has abandoned this argument on appeal before this panel. *See* Pet. Br. at 7.

[3] Before us, Petitioner claims inconsistently that counsel discovered her removal order in January 2019, Pet. Br. at 3, and February 2019, id. at 11. We will credit the later date, as did the BIA and the IJ. In any event, a single month does not change our analysis.

short notice when their prior building was forced to close." Pet. Mot. And shortly after this move, the attorney drafting Aguiluz's motion left the firm—without filing the motion to reopen. It allegedly took Aguiluz's new attorney a full three months "to get up to speed" and complete Aguiluz's motion. Pet. Mot.

The IJ denied Aguiluz's motion to reopen and rescind her removal order, finding that it was both untimely and lacked merit. Although acknowledging Aguiluz's mental health issues and age, the IJ concluded that Aguiluz's "inability to read [her] hearing notice" did not amount to exceptional circumstances authorizing reopening her case. IJ Order at 2. In any event, Aguiluz could not overcome her motion's untimeliness by blaming counsel, since she failed to comply with the BIA's procedural requirements, including that she first file a bar complaint against counsel. The IJ also declined to exercise his sua sponte reopening authority, concluding that Aguiluz failed to show a "truly exceptional" situation justifying his use of discretionary authority to reopen her case. IJ Order at 3.

**B.**

On appeal to the BIA, Aguiluz reiterated her original arguments. Aguiluz faulted the IJ for ignoring her "severe mental health issues and her status of a minor at the time," which she argued justified both equitable tolling and reopening her case. Pet. BIA Br. at 9. Aguiluz contended that equitable tolling should prevent the 180-day time limit from barring her case, again asserting her mental illness, her age, and "the unexpected delays to Counsel." Pet. BIA Br. at 15. Turning to the merits of her motion, Aguiluz argued that "exceptional circumstances" justified reopening her case: her "age, history of trauma—and particularly trauma related to the hearing itself and her application for asylum—and the burdens placed on her on relocation." Pet. BIA Br. at 23.

4

The BIA dismissed Aguiluz's appeal. First, the BIA found that Aguiluz's motion was untimely, since Aguiluz "has not demonstrated that the 180-day time limit on filing a motion to reopen based on exceptional circumstances should be equitably tolled." BIA Order at 3. Her request for equitable tolling based on ineffective assistance of counsel also failed on procedural grounds. In any event, "even assuming the filing deadline was subject to equitable tolling," the BIA found that Aguiluz "has not established exceptional circumstances prevented her failure to appear." BIA Order at 3–4. The BIA expressed sympathy for Aguiluz's plight but agreed with the IJ that Aguiluz had "not demonstrated that her age, prior history of trauma and mental health issues, or the burdens associated with her relocation to the United States prevented her from appearing for her hearing." *Id.* And, like the IJ, the BIA declined to exercise its sua sponte reopening authority. Aguiluz now petitions our court for review of the denial of her motion to reopen and rescind her removal order.

## II.

We review denials of motions to reopen for abuse of discretion, affording the BIA "broad discretion." *Kukalo v. Holder*, 744 F.3d 395, 402 (6th Cir. 2011). We will not disturb a denial unless it "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)). Where, as here, the BIA issued its own opinion but also adopted the IJ's reasoning, we review both decisions. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

To successfully reopen her *in absentia* removal order, Aguiluz must clear two consecutive statutory hurdles. *See* 8 U.S.C. § 1229a(b)(5)(C)(i). First, Aguiluz must demonstrate the BIA abused its discretion by finding her motion to reopen was untimely. Second, Aguiluz must

5

establish the BIA abused its discretion in considering her motion unsupported by exceptional circumstances excusing her failure to appear. We consider each in turn.

**A.**

Motions to rescind *in absentia* removal orders must be filed "within 180 days after the date of the order of removal." 8 U.S.C. § 1229a(b)(5)(C)(i). The IJ issued Aguiluz's removal order on January 10, 2018. So her motion to reopen was due by July 9, 2018 (180 days later). Since Aguiluz filed the motion on September 16, 2019 (more than a year after the filing deadline), it is untimely. Aguiluz does not contest that her motion was untimely, but asks us to hold that equitable tolling excuses her untimeliness.

"Strictly defined, equitable tolling is the doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007) (cleaned up). Equitable "tolling does not expand the limitations period beyond its statutorily mandated boundaries; it merely stops the clock from running during the tolling period." *Colwell v. Tanner*, 79 F. App'x 89, 91 (6th Cir. 2003). We apply the equitable tolling doctrine to time-barred motions to reopen, including those to reopen removal proceedings. *Tapia-Martinez*, 482 F.3d at 422. Equitable tolling does not allow Aguiluz's motion to reopen for three reasons.

First, Aguiluz's request for equitable tolling is doomed by simple chronology. Equitable tolling is usually applied where the claimant "did not discover the injury until after the limitations period had expired." *Tapia-Martinez*, 482 F.3d at 422. Equitable tolling, of course, is an equitable doctrine that suspends the running of a statute of limitations, not a doctrine that speaks to claim accrual, which is typically where "discovery" of an injury might matter. *Compare Holland v. Florida*, 560 U.S. 631, 649–50 (2010), *with Dibrell v. City of Knoxville*, 984 F.3d 1156, 1161–62

(6th Cir. 2021). As such, equitable tolling focuses on possible extraordinary circumstances standing in the way of timely filing (like fraudulent concealment by a defendant) despite due diligence on the part of a plaintiff. *See Holland*, 560 U.S. at 649–52; 51 *Am Jur. 2d Limitation of Actions* §§ 155–56 (Oct. 2023 update). This case is not about when the statute of limitations or time to move to reopen began to run—neither party disputes that Aguiluz's removal order (on January 10, 2018) started the clock. It's about whether Aguiluz should be excused from failing to file her motion to reopen timely.

So why do our equitable tolling cases (which are not about claim accrual per se) mention the discovery of the injury? *See, e.g.*, *Tapia-Martinez*, 482 F.3d at 422.[4] There's a common-sense answer: a plaintiff seeking equitable tolling must establish that, despite due diligence, she couldn't figure out the basis for her claim in time to file within the limitations period. In other words, tolling only makes sense if the person seeking the tolling didn't know vital information about her claim in time to file within the relevant period.

Here, Aguiluz can't meet even this requirement. Aguiluz's mother's hearing, when Aguiluz learned she missed her initial hearing, occurred only 13 days after her removal order was issued. Pet. Br. at 3. Thus, Aguiluz discovered the problem long before the 180-day limitations period expired and in time to allow her to move to reopen within the period. So the doctrine of equitable tolling simply doesn't apply to her situation.

Next, the actions that Aguiluz took in response to learning of her removal order are unlike the "diligent efforts" that we require for equitable tolling. *Tapia-Martinez*, 482 F.3d at 422. As the

---

[4] We note that the Supreme Court's equitable tolling decisions omit any mention that plaintiff must discover their injury after the limitations period. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."); *see also Holland*, 560 U.S. at 649.

BIA noted, Aguiluz failed to even "seek legal counsel or other assistance until over 1 year after the issuance of the *in absentia* removal order," even as her mother retained counsel in the same matter. BIA Order at 2. In a similar case, we found that an alien did not exercise due diligence when "she did not inquire about her immigration status for approximately one year despite having actual knowledge that the BIA dismissed her case, and, after learning of the need to file a motion to reopen, she waited over three months to file." *Barry v. Mukasey*, 524 F.3d 721, 725 (6th Cir. 2008). So Aguiluz did not satisfy the diligence prerequisite for equitable tolling.

Finally, even assuming equitable tolling to February 2019 (when Aguiluz claims her mother's counsel learned of her removal order), Aguiluz's motion remains untimely. Seven more months elapsed before she filed the motion on September 16, 2019 (longer than the 180-day limitations period). Aguiluz argues that the ineffective assistance of her former counsel excuses this second bout of untimeliness.

We allow motions to reopen based on ineffective assistance of counsel but subject them to three procedural requirements required by the BIA: "(1) that the motion be supported by an affidavit detailing counsel's failings, (2) that counsel be informed of the allegations, and (3) that the motion show that disciplinary charges have been filed with the appropriate authority." *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (citing *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (B.I.A. 1988)). As the BIA noted, Aguiluz failed to comply with *Lozada*'s third requirement, since she did not file a complaint against former counsel with the appropriate authority. Aguiluz attempts to excuse this failure by arguing that the "circumstances which caused the late filing of the motion" (a lawyer's departure and an office move) rendered former counsel ineffective, but "were not necessarily a violation of legal ethics or incomptence [sic]." Pet. Br. at 13. Aguiluz cites several decisions by other circuits excusing "the failure to file the bar complaint where counsel

acknowledged the ineffectiveness and made every effort to remedy the situation or where the ineffective counsel is evident on the face of the record." Pet. Br. at 13–14 (citing *Fadiga v. Att'y Gen.*, 488 F.3d 142, 156–57 (3d Cir. 2007), *Esposito v. INS*, 987 F.2d 108, 111 (2d Cir. 1993), *Lo v. Ashcroft*, 341 F.3d 934, 938 (9th Cir. 2003), *Castillo-Perez v. INS*, 212 F.3d 518, 525–26 (9th Cir. 2000)).

But, given our own recent decision in *Guzman-Torralva v. Garland*, 22 F.4th 617 (6th Cir. 2022), Aguiluz's argument is unpersuasive. *Guzman-Torralva* makes clear that "the requirement to file a bar complaint is not necessarily excused whenever counsel acknowledges his ineffectiveness." *Id.* at 621. An "admission of error alone" won't satisfy the requirement since it "won't prevent collusion between counsel and the alien or help police the immigration bar." *Id.* (internal quotation marks omitted). At the very least, *Lozada* requires petitioners who failed to file a complaint, like Aguiluz, to explain "why not." 19 I. & N. Dec. at 639. Aguiluz fails to justify her refusal to file a disciplinary complaint—simply pointing to former counsel's excuses for their untimeliness. Unless she can provide an explanation to the contrary, Aguiluz should have filed a Tennessee bar complaint against her former counsel. Without any such complaint, Aguiluz may not ground a request for equitable tolling on alleged ineffective counsel.

**B.**

Aguiluz's motion to reopen, even if timely, alleges nothing like the exceptional circumstances that would justify reopening her case. Aguiluz claims that she failed to appear at her initial hearing due to "exceptional circumstances," faulting the BIA for not considering her reasons "in their totality, but limiting [them] to her young age, history of trauma, and burdens associated with her relocation to the United States." Pet. Br. at 7. For Aguiluz, her misunderstanding, "when combined with unusual circumstances of a mother and minor child

having separate hearing dates, and where the reader of the notices is a traumatized minor who does not speak English," are "exceptional circumstances" justifying reopening her case. Pet. Br. at 8.

To see if Aguiluz's argument has any merit, we first look to the statute's text. *Limtiaco v. Camacho*, 549 U.S. 483, 488 (2007) ("As always, we begin with the text of the statute."). The IJ may rescind an *in absentia* removal order "upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). In defining "exceptional circumstances," the statute provides an illustrative list: "circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). What do these examples have in common? They all refer to death, serious illness, or violence suffered by the alien or an immediate family member. Aguiluz's situation—failing to read a notice she admittedly received— is a "less compelling circumstance[]." *Id.* Her failure to read the notice is certainly not "beyond [her] control." *Id.* Aguiluz could have remedied her mistaken belief regarding her hearing date by reading the date on her own notice, just as she read that on her mother's.

Not only does the text contradict Aguiluz's claim, but so do our Court's relevant precedents. On point here, we have held that a "good faith but mistaken belief as to the correct date" of a hearing is not an exceptional circumstance. *Acquaah v. Holder*, 589 F.3d 332, 335–36 (6th Cir. 2009). Similarly, we found that a minor's expectation that her case would be consolidated with her parent's did not count as an exceptional circumstance. *Ilias v. Gonzales*, 174 F. App'x 893, 895–96 (6th Cir. 2006).

Accordingly, both the statute's text and our precedents indicate that Aguiluz's mistaken belief her hearing would occur alongside her mother's, although perhaps understandable, is not an "exceptional circumstance" sufficient to justify reopening her case.

**III.**

For these reasons, we deny Aguiluz's petition for review.